Robert N. Mayo v. Commissioner.
Mayo v. Commissioner
Docket No. 4616-69 SC.
United States Tax Court
T.C. Memo 1971-118; 1971 Tax Ct. Memo LEXIS 214; 30 T.C.M. (CCH) 505; T.C.M. (RIA) 71118; May 24, 1971, Filed Robert N. Mayo, pro se, Box 84, Aspen, Colo.Nicholas G. Stucky, for the respondent. TANNENWALD
Memorandum Findings of Fact and Opinion TANNENWALD, Judge: Respondent determined a deficiency of $306.95 in petitioner's income taxes for the year 1967. Because of a concession by the petitioner, the sole issues for our determination are (1) the salvage value of certain rental property owned by the petitioner and (2) whether a contribution to an individual qualifies as a charitable contribution under section 170. [1]
Some of the facts have been stipulated and are found accordingly. Petitioner, Robert N. Mayo, was a legal resident of Aspen, Colorado, at the *215 time the petition herein was filed. For the taxable year 1967, petitioner and his wife, who were then residing in Arizona, filed a joint return with the district director of internal revenue in Phoenix, Arizona. [2]
Depreciation In 1965, petitioner, who is a carpenter, constructed a building on some land owned by him near Aspen, Colorado. Petitioner and his wife used the building as their personal residence from the date of its completion until approximately January 1, 1967. Thereafter, and throughout 1967, the building was not occupied by petitioner and his wife and was rented to third parties. 506 The building has two stories, each of which can be rented as a separate dwelling unit. The ground floor is constructed of cement blocks with a frame interior; the upper floor is completely timber. It is possible to remove the *216 entire upper floor and use it as an individual dwelling unit at some other location. In their 1967 joint return, petitioner and his wife deducted $2,250 as depreciation. This figure was arrived at by using a basis for the dwelling of $22,500, a 10-year useful life, and a salvage value of zero. Respondent accepted this basis and estimated useful life, but disallowed all but $1,236 of the depreciation deduction on the ground that after 10 years the dwelling unit would have a salvage value of at least $10,140. At trial, respondent expressly conceded the 10-year estimated useful life of the building involved herein, despite the fact that it is substantially shorter than the 40- or 45-year period set forth in his guidelines. See Rev. Proc. 62-21, 1962-2 C.B. 418, 419-420. He only asserts that the deficiency should be sustained on the basis of his determination of salvage value. Petitioner argues that, because of a claimed intention on his part to abandon the use of the building as rental property at a future date, we should determine that the salvage value is zero. The issue herein is therefore very narrow - what is the salvage value of the building? Its resolution involves *217 a pure factual determination ( Dezendorf v. Commissioner, 312 F. 2d 95, 96 (C.A. 5, 1963); S. & B. r/ealty Co., 54 T.C. 863, 873 (1970)), and the burden of proof is on the petitioner ( Goldberg v. Commissioner, 239 F. 2d 316, 319 (C.A. 5, 1956); Rule 32, Tax Court Rules of Practice). Petitioner's evidence to support his claim of a zero salvage value consisted solely of his own testimony that at some date in the future - and in any event at the end of the 10-year period of useful life, which he accepts - he intended to demolish the building and replace it with condominium apartments. He admitted, however, that, in order to implement his plans, he would have to seek the help of others in both the development and financing, that he would need to acquire additional land beyond what he now owns, that his land was presently subject to a non-conforming use, and that a zoning variance would have to be obtained. Under these circumstances, and granting that petitioner, in good faith, intended to demolish the building at the end of the 10-years, we think that intention was so circumscribed by potential difficulties as to preclude any finding that he *218 would in fact do so. [3] Moreover, we note that petitioner's claim of zero salvage value is severely undermined by his own testimony that he would remove the upper floor of the building and use it elsewhere if the envisioned condominium development materialized, in which event it would obviously have some value. Nor can petitioner's position be sustained on the ground that, aside from the prospective condominium project and the accompanying demolition, he expected to retire the building as rental property after the expiration of the 10-year period. Again granting petitioner's subjective intention *219 in this regard, it does not follow that the building would have a zero salvage value at that time. The only evidence presented which might be relevant to such a determination was petitioner's testimony that real estate values were rising rapidly in the area in which his duplex is located. He estimated that, after 10 years, the value of the land and building would double and he estimated that the portion of such increased value attributable to the building would be between $35,000 and $40,000. Disregarding the absence of any evidence that petitioner had any expertise as to real estate values, it would seem that increased realty values would call for higher salvage value. Concededly, at some point, increased values could render the maintenance of a rental duplex economically unsound. Such an eventuality would point in the direction of a decrease in salvage value on the theory that any subsequent owner of the land would not want the building. Cf. M. Pauline Casey, 38 T.C. 357, 382 (1962). Petitioner's testimony, however, presents no more than a speculative possibility. Since 507he produced no other evidence, we are compelled to conclude that he has failed to sustain *220 his burden of proof. Cf. Easter v. Commissioner, 338 F. 2d 968, 969 (C.A. 4, 1964), affirming a Memorandum Opinion of this Court; New England Tank Industries, Inc., 50 T.C. 771, 780-782 (1968). Charitable Contributions On their joint return for 1967, the petitioner and his wife claimed deductions totalling $355 as charitable contributions. These contributions were made up of the following: Cash
$100
Hilda and Maynard Kurtz
200
Community Chest
10
Boy Scouts
5
Girl Scouts
5
Christmas Fund
5
Miscellaneous 30
$355
In his notice of deficiency, respondent disallowed all but $100 of the claimed contributions. However, as indicated by the parties' stipulations, respondent has now conceded all of the claimed contributions except for one $200 payment. The payment in question was made to Hilda and Maynard Kurtz, who were Mennonite missionaries serving in Tanzania. Petitioner, himself a Mennonite, made his donation to them directly instead of through the established Mennonite organizational channels, in order to insure their receiving this amount in addition to the amount allocated to the Tanzania mission by the church budget. *221 In order for a charitable contribution to be deductible under section 170, the donee must be one of the organizations described in section 170(c). E.g., George E. Peace, 43 T.C. 1 (1964). Contributions to individuals, as opposed to organizations, are not within the ambit of section 170(c). Compare S. E. Thomason 2 T.C. 441 (1943), and Cap Andrews Tilles, 38 B.T.A. 545 (1938), with George E. Peace, supra.It is clear that the direct contribution to Hilda and Maynard Kurtz does not come within section 170(c) and is not deductible. In order to take into account respondent's concessions of an additional $55 of charitable contributions, Decision will be entered under Rule 50. Footnotes
1. All references are to the Internal Revenue Code of 1954, as amended.↩
2. The deficiency notice herein was issued in the name of petitioner and his wife, but only petitioner filed a petition with this Court. The record indicates that certain payments may have been made on the deficiency subsequent to the issuance of the notice. Any such payments will presumably be taken into account in implementing our decision herein.↩
3. In view of this conclusion and the fact that respondent did not raise the issue, we need not address ourselves to the difficult question whether a present intention to demolish at a future date requires that the cost basis of the building be allocated entirely to the land. Compare Mechanics & Merchants Bank v. United States, 164 F. Supp. 246 (Ct. Cl. 1958), with $2 Estate of E. P. Lamberth, 31 T.C. 302, 319 (1958), and Lynchburg National Bank & Trust Co., 20 T.C. 670, 673-674 (1953), affd. 208 F. 2d 757, 759↩ (C.A. 4, 1953).