MURRAY F. DAVENPORT and LELA C. DAVENPORT, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Davenport v. Commissioner
Docket No. 6528-74.
United States Tax Court
T.C. Memo 1975-369; 1975 Tax Ct. Memo LEXIS 5; 34 T.C.M. (CCH) 1585; T.C.M. (RIA) 750369; December 30, 1975, Filed Murray F. Davenport, pro se. J. Michael Brown, for the respondent. SCOTT MEMORANDUM FINDINGS OF FACT AND OPINION SCOTT, Judge: Respondent determined a deficiency in petitioners' Federal income tax for the calendar year 1972 in the amount of $283. One of the issues raised by the pleadings has been disposed of by agreement of the parties, leaving for our decision whether respondent properly disallowed *6 $1,034 of petitioners' claimed charitable contributions as not being deductible because of being specified to be for the benefit of a specific individual. FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. Petitioners, husband and wife, resided in Dallas, Texas at the time the petition in this case was filed. Petitioners filed a joint Federal income tax return for the calendar year 1972 with the Director, Internal Revenue Service Center, Austin, Texas. Petitioners are the father and mother of M.D. Davenport who is the minister, founder, and president of the Everlasting Gospel, Inc. The Everlasting Gospel, Inc. is a charitable organization whose primary function is to preach and do evangelical work throughout the southern part of the United States. It is a charitable organization as defined in section 170(c)(2), I.R.C. 1954, [1] so that contributions to it are deductible by a taxpayer under section 170. Petitioners' son, as the chief evangelist of the Everlasting Gospel, Inc., spends approximately 60 percent of his time traveling throughout the southern United States participating in and forming revival-type services under *7 the name the Crusade of the Everlasting Gospel. The Everlasting Gospel, Inc. broadcasts its message over radio stations, generally in the East Texas area. During the taxable year 1972 petitioners made contributions deductible under section 170 to various charitable organizations, including cash contributions to the Everlasting Gospel, Inc. in the amount of $1,152. In addition, in each of the months January through September 1972 petitioners paid $95 directly to the owner of a property on Wilson Street in Dallas, Texas. This property was a five-room house. Petitioners' son traveled throughout the United States with a trailer in which he and his wife and children lived while he was conducting his evangelistic work outside of Dallas, Texas. Murray F. Davenport (hereinafter referred to as petitioner) was of the opinion that a house should be maintained for his son and his son's family to use to live in when they were in Dallas. The son also needed the house in which to leave furniture and personal belongings when he was away from Dallas and to store radio and photographic equipment used in his work *8 for the Everlasting Gospel, Inc. Petitioner was also of the opinion that his son needed a place in Dallas to use for taping radio programs for the Everlasting Gospel, Inc. Petitioner's son and the son's family did live in the house on Wilson Street in Dallas when they were in that city, and radio programs for the Everlasting Gospel, Inc. were taped on the Wilson Street premises by use of the radio equipment maintained there by petitioner's son. The Wilson Street house had a living room, a dining room which was in effect more a part of the living room, two bedrooms, a kitchen and a bath. The living room, dining room, and kitchen were used for family living except that an occasional meeting of some type in connection with the work of the Everlasting Gospel, Inc. might be held in this area. One of the bedrooms was used for storing radio and photographic equipment of the Everlasting Gospel, Inc. although there was a bed in this room which was used when the family was in Dallas. The other bedroom had some photographic equipment in it as well as being used as a bedroom. The bathroom was used to develop pictures made for use in the revival work of the Everlasting Gospel, Inc. as well *9 as being used by the family when they were living in the house while in Dallas. Petitioners, on their joint income tax return for 1972, deducted under charitable contributions the amount of $2,007. Respondent in his notice of deficiency disallowed $1,034 of these claimed charitable contributions with the following explanation: You may not claim a deduction for amounts given to a charitable organization if you are permitted to specify that your contribution is for the benefit of a specific individual. OPINION Petitioner takes the position that his total claimed charitable contributions of $2,007 were either contributions to "or for the use of" a charitable organization and therefore he should be entitled to the entire deduction claimed by him for charitable contributions. Respondent recognizes that under the provisions of section 170(a) a deduction is allowable for any charitable contribution as defined in section 170(c) paid within the taxable year and that section 170(c) defines a charitable contribution to mean a contribution or gift "to or for the use of" a charity specified therein. [2] Respondent contends that the $855 paid by petitioner at the rate of $95 a month for the *10 first 9 months of 1972 for rental of the house on Wilson Street in Dallas, Texas was not a charitable contribution either to or for the use of the Everlasting Gospel, Inc. as that term is used in section 170(c) of the Code. As to the difference between the $855 which was paid by petitioner as rental on the house on Wilson Street in Dallas and the $1,034 disallowed by respondent in his notice of deficiency, respondent *11 contends that petitioner has not established that the amount was actually paid as charitable contributions. The record does not support the argument of respondent with respect to the $179 excess of $1,034 over the $855 paid by petitioner as rental on the property on Wilson Street in Dallas. Petitioner not only personally testified as to the contributions made not only to the Everlasting Gospel, Inc. but also to various other charitable organizations such as other churches, but introduced in evidence a detailed record which he kept of such contributions. In our view this is sufficient evidence to make a prima facia case that petitioner made cash charitable contributions of $1,152 in the calendar year 1972 and respondent has offered no contrary evidence. Furthermore, respondent's sole basis for disallowance of any portion of petitioner's claimed deduction for charitable contributions was on the ground that the amount of $1,034 was paid for a specific person. We conclude from the evidence and have so found in our findings that petitioner did make charitable contributions in the year 1972 in the amount of $1,152. The record is clear that the $95 payments for each month of January through *12 September 1972 were made directly to the owner of the house on Wilson Street for rental of the property and that petitioner made these payments in order that his son and his son's family might have a place to live when they were in Dallas, Texas. Petitioner contends that the Everlasting Gospel, Inc. would have had to maintain a home in Dallas for its minister and a place in which to store its radio and photographic equipment and to tape radio programs if he had not paid for rental on the Wilson Street house. Petitioner concludes from this contention that he should be entitled to his claimed deduction as a payment he made that otherwise the Everlasting Gospel, Inc. would have found it necessary to make. Petitioner's contention is not supported by the facts in this case and even if it were, his conclusion therefrom would not be proper. The cases are clear that the criteria for determining whether an amount is a charitable contribution is not whether the payment which is not made directly to the charity might incidentally relieve the charity of some cost but rather whether the payment is such *13 that the contribution is "for the use of" the charity in a meaning similar to "in trust for." S. E. Thomason,2 T.C. 441 (1943). The Thomason case involved a payment made by a taxpayer directly to an educational institution for the education and maintenance of a child who was a ward of the IllinoisChildren's Home and Aid Society. The taxpayer there contended that since the IllinoisChildren's Home and Aid Society would have had to pay for the education and maintenance of this boy had he not done so, his payments were payments "for the use of" that society. In holding that the amount paid by the taxpayer in the Thomason case to the educational institution was not a charitable contribution for the use of the IllinoisChildren's Home and Aid Society, we pointed out that these payments were earmarked "from the beginning not for a group or class of individuals, not to be used in any manner seen fit by the society, but for the use of a single individual in whom" the taxpayer "felt a keen fatherly and personal interest." In that case we pointed out that charity begins where certainty in beneficiaries ends, quoting from a Supreme Court case which held that the uncertainty *14 of the objects of the donation is an essential element of charity. Here, whether the Everlasting Gospel, Inc. would have chosen to maintain a house in Dallas for the use of petitioner's son and his family as living quarters when in Dallas and for storing radio and photographic equipment, as well as petitioner's son's personal belongings, is not shown by this record. It may have been that had petitioner paid the $855 directly to the Everlasting Gospel, Inc., that organization would have chosen to use the funds otherwise, store its equipment elsewhere and let petitioner's son and his family use their trailer to live in when in Dallas as they did when they traveled out from Dallas. However, even were there something in this record to indicate that the Everlasting Gospel, Inc. would have rented a house in Dallas for the use of petitioner's son and for storing radio and photographic equipment, it would not follow that the deduction would be allowable since by making the payments directly to the landlord petitioner took away the option of the Everlasting Gospel, Inc. with respect to its use of the funds. As we have pointed out in several cases, *15 the charity must have full control of the funds donated in order for a taxpayer to be entitled to a charitable deduction, and such is not the situation where the funds are designated by the donor for the use of a particular individual. See Mozelle C. Kluss,46 T.C. 572 (1966); Archibald W. McMillan,31 T.C. 1143 (1959); and S. E. Thomason,supra.Cf. George E. Peace,43 T.C. 1, 7-8 (1964), in which we reiterated that the taxpayer's contribution, though he suggested specific missionaries to be supported therewith, was to go into the charity's common fund to be administered and distributed by the charity as it desired. In George E. Peace,supra, we pointed out that the taxpayers' designation of three or four missionaries to be supported by their donation was merely a manifestation of their desire to have their donations credited to the support allowance of those individuals and not an intent that the charity be limited in using the funds as it saw fit. As we pointed out in Mozelle C. Kluss,supra at 575, although other factors are relevant, in *16 determining whether an amount is deductible as a charitable contribution one critical factor is the donor's intent. In the instant case, in our view the evidence as a whole shows that it was petitioner's intent to benefit his son by insuring that his son have a place to live with his family when in Dallas. Under these circumstances the payments were for the use or benefit of a particular individual, petitioner's son, and therefore are not charitable deductible contributions under section 170, even though incidentally the payments made by petitioner may have relieved the Everlasting Gospel, Inc. of the necessity of paying for a place for petitioner's son to live when he was in Dallas. Decision will be entered under Rule 155.
Footnotes
1. All statutory references are to the Internal Revenue Code of 1954, as amended.↩
2. SEC. 170. CHARITABLE, ETC., CONTRIBUTIONS AND GIFTS. * * *
(c) Charitable Contribution Defined.--For purposes of this section, the term "charitable contribution" means a contribution or gift to or for the use of-- * * *
(2) a corporation, trust, or community chest, fund, or foundation-- (A) created or organized in the United States or in any possession thereof, or under the law of the United States, any State, the District of Columbia, or any possession of the United States; (B) organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes or for the prevention of cruelty to children or animals; * * *↩