Don K. WHITE and Alice S. White, Plaintiffs-Appellants,

v.

The UNITED STATES of America, Defendant-Appellee.

No. 81–2033.

United States Court of Appeals, Tenth Circuit.

Jan. 20, 1984.

Wilford W. Kirton, Jr., Salt Lake City, Utah (Dan S. Bushnell, Raeburn G. Kennard, Bruce Findlay, and Robert P. Lunt, Salt Lake City, Utah, with him on brief), of Kirton, McConkie & Bushnell, Salt Lake City, Utah, for plaintiffs-appellants.

Melvin E. Clark, Jr., Washington, D.C. (Glenn L. Archer, Jr., Asst. Atty. Gen., Michael L. Paup and Robert T. Duffy, Washington, D.C. [Francis M. Wikstrom, U.S. Atty., Salt Lake City, Utah, for the Dist. of Utah, of counsel], with him on brief), Tax

Div., Dept. of Justice, Washington, D.C., for defendant-appellee.

Before DOYLE, BREITENSTEIN and LOGAN, Circuit Judges.

LOGAN, Circuit Judge.

Don K. White and Alice S. White, parents of a 19-year-old missionary serving the Church of Jesus Christ of Latter-Day Saints (Mormon Church), claimed an income tax deduction under I.R.C. § 170 for expenditures they made at the request of the Mormon Church to support their son's missionary work. The Whites paid $100 to a travel agency for part of their son's transportation expenses to his mission post, and they paid approximately $175 a month directly to their son to defray his living expenses. The Whites claimed the deduction on an amended return and requested a refund. When the Internal Revenue Service (IRS) denied the refund claim, the Whites sued for a refund in federal district court. The district court denied the claim, 514 F.Supp. 1057, and the Whites appealed.

The Mormon Church has 25,000 missionaries in service at any given time, most of them receiving support in the same manner as the Whites' son. The policy of the church is to ask a missionary's parents to contribute $100 toward their child's travel expenses and to make monthly payments directly to their child. The church sets the monthly payments in an amount it deems necessary to pay the child's minimum living expenses. The church does not discourage payments in excess of the minimum amounts but regards such payments as personal gifts to the missionary. The church exercises almost total control over the missionary, who serves as an ordained minister of the church.

The church gives several reasons to explain why it does not itself collect and distribute money from members who are willing to support missionaries. First, the church believes that having the member parents donate money while the missionary donates services fosters the church doctrine of sacrifice and consecration. Second, the direct payments encourage frugality because the missionary is aware of the personal sacrifice by specific persons to assist the missionary work. Third, the direct contribution program saves the church administrative expenses. Possibly it also encourages additional generosity from members, some of whom might sacrifice more readily to support a missionary from their own families.

 Taxpayers claim that expenditures to support their child's missionary work qualify as charitable contributions "to or for the use of" the Mormon Church, see I.R.C. § 170(c), which is a qualified donee. In this case we are not required to distinguish between gifts to the church and gifts "for the use of" the church; therefore we do not discuss that distinction. See *Rockefeller v. Commissioner*, 676 F.2d 35 (2d Cir. 1982). We agree with the Whites that the amounts they contributed were at least to the use of the Mormon Church within the meaning of I.R.C. § 170.

 Treas.Reg. § 1.170A–1(g) provides:

"No deduction is allowable under section 170 for a contribution of services. However, unreimbursed expenditures made incident to the rendition of services to an organization contributions to which are deductible may constitute a deductible contribution. For example, the cost of a uniform without general utility which is required to be worn in performing donated services is deductible. Similarly, *out-of-pocket transportation expenses necessarily incurred in performing donated services are deductible. Reasonable expenditures for meals and lodging necessarily incurred while away from home in the course of performing donated services also are deductible.*"

(Emphasis added.) All the regulations under I.R.C. § 170, at least since it was enacted in 1954, have used similar words. Because the Code and section 170 have been through several major revisions without significant changes affecting the quoted language, we believe that Treas.Reg. § 1.170A–1(g) reflects the will of Congress.

*See National Muffler Dealers Ass'n v. United States,* 440 U.S. 472, 477, 99 S.Ct. 1304, 1307, 59 L.Ed.2d 519 (1979); *Helvering v. Winmill,* 305 U.S. 79, 83 (1938). The government argues that the church itself must have control over the expenditure of the funds if the donor is to receive the deduction, but that test has never been applied to expenses incurred by a taxpayer performing services for a bona fide charitable organization. *See, e.g., Sherman H. Sampson,* 43 T.C.M. (CCH) 1408 (1982); 2 Bittker, Federal Taxation of Income, Estates and Gifts ¶ 35.12 n. 14 (1981). Rather the courts have focused on whether the donor's intent was charitable, *see Dowell v. United States,* 553 F.2d 1233, 1238 (10th Cir.1977), and whether the primary purpose of the expenditure was to further the aims of the charitable organization or to benefit the spender. Under this approach, parents of an olympic figure skater could not deduct the travel and living costs of accompanying their daughter, *Babilonia v. Commissioner,* 681 F.2d 678 (9th Cir.1982); the traveler on a people-to-people tour of China could not deduct the expenses of taking the tour, *Sheffels v. United States,* 264 F.Supp. 85 (E.D.Wash.1967), *aff'd mem.,* 405 F.2d 924 (9th Cir.1969); and a church choir singer could not deduct the travel costs of attending choir practice. *Aram A. Churukian,* 40 T.C.M. (CCH) 475 (1980). Applying this test, we agree with *Travis Smith v. Commissioner of Internal Revenue,* 60 T.C. 988 (1973), that transportation and living expenses of a missionary serving far from home are deductible, within the Code's percentage limitations, because the expenditures primarily benefit the church and not the spender.

We must here determine whether the result should be different when taxpayers seeking the deduction pay the expenses of their 19-year-old son whom they claim as a dependent on their income tax return. An IRS ruling, Rev.Rul. 62–113, 1962–2 C.B. 10, would deny the deduction on the ground it was intended as a gift to the son, although it would permit the deduction if the parents gave the money to the church and the church paid the son's missionary expenses.

*Eldon D. Brinley,* 46 T.C.M. (CCH) 734 (1983), a case with facts similar to the facts of this case, reached the same result. We disagree with *Brinley.* We see no rational basis for distinguishing the payment of the expenses of a dependent son from the payment of a taxpayer's own expenses to perform the same services. I.R.C. § 262, which disallows deductions for "personal, living, or family expenses," does not support such a distinction. Treas.Reg. § 1.262–1(b)(5) states that "[e]xpenses incurred in traveling away from home (which include transportation expenses, meals, and lodging) and any other transportation expenses" deductible under Treas.Reg. § 1.170A–1(g) are exceptions to the nondeductibility rule of section 262. If section 262 barred a deduction for expenditures made on behalf of a dependent child, it would also bar a deduction for living expenses incurred by a taxpayer while performing missionary services.

Again, the control test the government urges upon us is not the appropriate test to determine the deductibility of payment of expenses of others who perform services to benefit a charity. *David Rockefeller v. Commissioner,* 676 F.2d 35 (2d Cir.1982), permitted deductions for salaries taxpayers paid to employees who provided services to charities taxpayers supported. Apparently, in *Rockefeller* the IRS did not even contend that the payments were not for the use of the charities. *See also Archbold v. United States,* 444 F.2d 1120, 195 Ct.Cl. 278 (1971) (deduction allowed for money paid to lawyers to prevent a highway from being built through land taxpayer donated for a park).

■ Cases denying deductions when donors earmarked a contribution to a charitable organization for payment to a particular person or when donors paid the educational or living expenses of persons who might have been supported by a charitable organization are also distinguishable. *E.g., Tripp v. Commissioner,* 337 F.2d 432 (7th Cir. 1964); *S.E. Thomason v. Commissioner,* 2 T.C. 441 (1943). In most of those cases the contribution served the charitable organization only by eliminating the need of one

possible object of the organization's bounty. A student whose educational or living expenses are paid by such a contribution is not serving the charitable organization. The line becomes a fine one when, for example, funds are earmarked as supplemental support to what the church itself gives to a minister or a missionary in the field. *See, e.g., Winn v. Commissioner,* 595 F.2d 1060 (5th Cir.1979); *Morey v. Riddell,* 205 F.Supp. 918 (S.D.Calif.1962); *Robert N. Mayo,* 30 T.C.M. (CCH) 505 (1971); *Murray F. Davenport,* 34 T.C.M. (CCH) 1585 (1975). But the proper test, we hold, is the same as when the expenditure is for expenses personally incurred—whether the primary purpose is to further the aims of the charitable organization or to benefit the person whose expenses are being paid. When the payment is for part of the costs of necessary travel and for all of the living expenses of a dependent member of taxpayers' household serving as a full-time church missionary away from home we have no difficulty concluding that the expenditure is deductible because the expenditure primarily serves the church.

The case is reversed and remanded for further proceedings consistent with this opinion.