ELDON D. BRINLEY AND MARY ALICE BRINLEY,
PETITIONERS *V.* COMMISSIONER OF INTERNAL REVENUE,
RESPONDENT

Docket No. 28349–81.    Filed June 6, 1984.

*Wilford W. Kirton, Jr.*, for the petitioners.
*Richard M. Elliott*, for the respondent.

### SUPPLEMENTAL OPINION

DAWSON, *Chief Judge*: This case is before us on petitioners'
motion for reconsideration[1] of our opinion in the above-
entitled case (hereinafter referred to as *Brinley I*), T.C. Memo.
1983–408. Under the facts of this case, Eldon D. and Mary
Alice Brinley (petitioners) paid a total of $942 in 1977 to a
church-designated travel agent for their son's travel to a site of
missionary service and directly to their son to sustain him
while he served as a missionary for the Church of Jesus Christ
of Latter-Day Saints (hereinafter referred to as LDS Church).
Petitioners claimed a charitable contribution deduction in the
amount of $942 on their Federal income tax return for the
taxable year 1977.

---

[1]Rule 161, Tax Court Rules of Practice and Procedure.

The issue[2] before us in *Brinley I* was whether petitioners were entitled to a charitable contribution deduction under section 170[3] for the $942 paid by them directly to the travel agent and their son. We held that petitioners were not entitled to deduct these amounts. Our holding was based on the fact that neither petitioners' son nor the travel agent was a qualified recipient of charitable contributions under section 170. Moreover, since the funds were given directly to petitioners' son for his personal use and could be expended by their son as he wished without accounting to anyone, petitioners' contributions did not satisfy the control requirement as articulated in *Peace v. Commissioner*, 43 T.C. 1, 7–8 (1964). Furthermore, as a result of the funds not being contributed to an official of the charitable organization, we found the decision in *Winn v. Commissioner*, 595 F.2d 1060 (5th Cir. 1979), affg. in part, revg. on this issue 67 T.C. 499 (1976), to be distinguishable.

The granting of a motion for reconsideration rests within the discretion of the Court. Such a motion is generally denied unless unusual circumstances or substantial error is shown. *Haft Trust v. Commissioner*, 62 T.C. 145 (1974), affd. on this issue 510 F.2d 43, 45 n. 1 (1st Cir. 1975). In this case, we granted petitioners' motion because the subsequently issued opinion of the Court of Appeals in *White v. United States*, 725 F.2d 1269 (10th Cir. 1984), is contrary to the holding in our original opinion, and *White* is factually indistinguishable from *Brinley I*.

A taxpayer is allowed a deduction for any contribution "to or for the use of" a qualified religious organization. Sec. 170 (c)(2)(B).[4] A taxpayer is also allowed a charitable contribution

---

[2]Petitioners' motion for reconsideration is directed exclusively to the charitable contribution issue and not to the two other issues in *Brinley I* involving educational travel expense and entertainment expense.

[3]All section references are to the Internal Revenue Code of 1954 as amended for the years in issue.

[4]Section 170 provides, in part, as follows:

(a) ALLOWANCE OF DEDUCTION.—

(1) GENERAL RULE.—There shall be allowed as a deduction any charitable contribution (as defined in subsection (c)) payment of which is made within the taxable year. A charitable contribution shall be allowable as a deduction only if verified under regulations prescribed by the Secretary.

\*     \*     \*     \*     \*     \*     \*

(c) CHARITABLE CONTRIBUTION DEFINED.—For purposes of this section, the term "charitable contribution" means a contribution or gift to or for the use of—

deduction for "unreimbursed expenditures made incident to the rendition of services" to a qualified donee. Sec. 1.170A–1(g), Income Tax Regs.;[5] *Upham v. Commissioner,* 16 B.T.A. 950 (1929); *Wolfe v. McCaughn,* 5 F. Supp. 407 (E.D. Pa. 1933).

It is undisputed by the parties that the LDS Church is a qualified donee under section 170(c) and is listed in the Internal Revenue Service Publication No. 78, Cumulative List of Organizations. In *Brinley I,* we found that petitioners had unreimbursed expenditures of $942 in order to sustain their son as an LDS Church missionary. We also found that petitioners' son rendered full-time services as an LDS Church missionary.

Respondent asserts that petitioners are not entitled to a charitable contribution deduction under section 1.170A–1 (g), Income Tax Regs., because petitioners did not personally render any services to the LDS Church. Respondent also asserts that the control requirement is a necessary test for the deductibility of contributions where, as here, the parents have the ability to channel funds to their son for the son's personal use ostensibly as a charitable contribution.

Petitioners contend, however, that the amounts paid by them were "incident to" charitable services because the expenditures were generated by their son's rendition of substantial and valuable services to the LDS Church as a missionary. Therefore, petitioners contend, the expenses are expressly deductible under section 1.170A–1 (g), Income Tax Regs.

Petitioners maintain that charitable service-related expenses are deductible regardless of the personal or family

---

* * * * * * *

(2) A corporation, trust, or community chest, fund, or foundation—

* * * * * * *

(B) organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes * * *

[5]Sec. 1.170A–1(g). *Contributions of services.* No deduction is allowable under section 170 for a contribution of services. However, unreimbursed expenditures made incident to the rendition of services to an organization contributions to which are deductible may constitute a deductible contribution. For example, the cost of a uniform without general utility which is required to be worn in performing donated services is deductible. Similarly, out-of-pocket transportation expenses necessarily incurred in performing donated services are deductible. Reasonable expenditures for meals and lodging necessarily incurred while away from home in the course of performing donated services also are deductible. * * *

nature of the expenses. In support of this contention, petitioners note that section 1.262–1(b)(5) and (c)(5),[6] Income Tax Regs., clearly states that expenses deductible under section 1.170A–1(g), Income Tax Regs., are not subject to the restrictions of section 262.[7] Petitioners also contend that this Court's reliance in *Brinley I* upon the church's control of the funds as a prerequisite to deductibility was inappropriate.

When faced with the same issue on facts that are indistinguishable from those in *Brinley I*, the U.S. Court of Appeals for the Tenth Circuit recently ruled that—

We disagree with *Brinley*. We see no rational basis for distinguishing the payment of the expenses of a dependent son from the payment of a taxpayer's own expenses to perform the same services. * * * [*White v. United States*, 725 F.2d at 1271.]

The Tenth Circuit fashioned the following rule of law:

the proper test, we hold, is the same as when the expenditure is for expenses personally incurred—whether the primary purpose is to further the aims of the charitable organization or to benefit the person whose expenses are being paid. When the payment is for part of the costs of necessary travel and for all of the living expenses of a dependent member of taxpayers' household serving as a full-time church missionary away from home we have no difficulty concluding that the expenditure is deductible because the expenditure primarily serves the church. [725 F.2d at 1272.]

---

[6]Sec. 1.262–1. Personal, living and family expenses.

(a) *In general.* In computing taxable income, no deduction shall be allowed, except as otherwise expressly provided in chapter 1 of the Code, for personal, living, and family expenses.

(b) *Examples of personal, living, and family expenses.* Personal, living, and family expenses are illustrated in the following examples:

* * * * * * *

(5) Expenses incurred in traveling away from home (which include transportation expenses, meals, and lodging) and any other transportation expenses are not deductible unless they qualify as expenses deductible under section 162, sec 1.162–2, and paragraph (d) of sec. 1.162–5 (relating to trade or business expenses), section 170 and paragraph (a)(2) of sec 1.170–2 or paragraph (g) of sec. 1.170A–1 (relating to charitable contributions) * * *

* * * * * * *

(c) * * * Certain items of personal, living, or family nature are deductible to the extent expressly provided under the following sections, and the regulations under those sections:

* * * * * * *

(5) Section 170 (charitable, etc., contributions and gifts).

[7]SEC. 262. PERSONAL, LIVING, AND FAMILY EXPENSES.

Except as otherwise expressly provided in this chapter, no deduction shall be allowed for personal, living, or family expenses.

An appeal from this decision would lie in the U.S. Court of Appeals for the Fifth Circuit. Consequently, we are not constrained by the *Golsen* rule[8] to apply the principle of law enunciated by the Tenth Circuit in the *White* case. Nonetheless, we think it important to fully consider the opinion in *White*.

Although the facts of the *Brinley I* and *White* cases are virtually indistinguishable, the same issue involved in each case was framed and analyzed in two different ways. In *White*, the District Court expressed and analyzed the issue in terms of the deductibility of the taxpayer parents' contributions[9] to their dependent son who was serving as a missionary for the LDS Church. 514 F. Supp. 1057, 1058 (D. Utah 1981). In *Brinley I*, this Court expressed and analyzed the issue in a similar fashion. However, the Tenth Circuit in *White* framed and analyzed the issue in terms of the deductibility of unreimbursed expenses[10] of the taxpayer parents incident to their dependent son's services as an LDS Church missionary.

We think the case law that has interpreted section 170 supports an important distinction between a taxpayer incurring expenses incident to rendering services to a charitable organization, on the one hand, and a taxpayer donating funds to an individual ostensibly as a representative of a charity (or a taxpayer earmarking donated funds to a charity for a particular individual), on the other hand.

In cases where a taxpayer had unreimbursed expenses incident to rendering services to a charity, our inquiry focused on whether the expenses provided a substantial, direct, personal benefit to the taxpayer or to someone other than the charity. *Seed v. Commissioner*, 57 T.C. 265, 276 (1971); *Fausner v. Commissioner*, 55 T.C. 620, 624 (1971), affd. 472 F.2d 54 (5th Cir. 1973); *Saltzman v. Commissioner*, 54 T.C. 722, 725 (1970).[11] We interpreted the "to or for the use of" language in section 170 to require that the charitable organization be the primary beneficiary of the taxpayer's unreimbursed expenses. *Seed v.*

---

[8]*Golsen v. Commissioner*, 54 T.C. 742 (1970), affd. 445 F.2d 985 (10th Cir. 1971).

[9]Hereinafter sometimes referred to as the contributions analysis.

[10]Hereinafter sometimes referred to as the unreimbursed expenses analysis.

[11]See *MacMichael v. Commissioner*, T.C. Memo. 1982–703; *Sampson v. Commissioner*, T.C. Memo. 1982–276; *Self v. Commissioner*, T.C. Memo. 1981–232; *Babilonia v. Commissioner*, T.C. Memo. 1980–207; *Churukian v. Commissioner*, T.C. Memo. 1980–205; *DeVitto v. Commissioner*, T.C. Memo. 1979–185; *McCollum v. Commissioner*, T.C. Memo. 1978–435.

<small>937</small>

*Commissioner, supra; Fausner v. Commissioner, supra; Saltz-man v. Commissioner, supra.*[12] If the primary beneficiary of the expenses was not the charity, the taxpayer was not allowed a corresponding deduction. See sec. 262.

In cases where a taxpayer donated funds to an individual ostensibly as a representative of a charity (or where a taxpayer earmarked donated funds to a charity for a particular individual), our inquiry focused on whether the taxpayer intended to contribute the funds for the benefit of the charity. *Kluss v. Commissioner,* 46 T.C. 572, 575 (1966); *Peace v. Commissioner,* 43 T.C. 1, 8 (1964); *Thomason v. Commissioner,* 2 T.C. 441, 444 (1943). See *Morey v. Riddell,* 205 F. Supp. 918 (S.D. Cal. 1962).[13] We determined that a taxpayer manifested his intent to benefit a charity, rather than a specific individual, by placing the contributed funds under the charity's control. *Peace v. Commissioner,* 43 T.C. at 7–8. Accordingly, we interpreted the "to or for the use of" language in section 170 to require that contributed funds had to be placed under a charity's control for a taxpayer to be entitled to a section 170 deduction. See *Kluss v. Commissioner, supra; Peace v. Commissioner, supra; Thomason v. Commisioner, supra.* See also *Morey v. Riddell, supra.*[14] Pursuant to the Court of Appeals for the Fifth Circuit, to which an appeal from this decision would lie, contributed funds are under a charity's control where a taxpayer transfers funds to an official of the charitable organization. *Winn v. Commissioner,* 595 F.2d 1060 (5th Cir. 1979), affg. in part, revg. on this issue 67 T.C. 499 (1976). See also *Morey v. Riddell, supra.*[15]

We continue to adhere to our analyses under section 170 whereby the "primary benefit to the charity" test is applied in cases where a taxpayer has incurred unreimbursed expenses incident to rendering services to a charity, and the "intent to benefit the charity" test is applied in cases where a taxpayer contributes funds to an individual (or to a charity earmarked for a specific individual). We do not disagree with the Tenth Circuit to the extent that it reaffirms that the "primary

---

[12]See cases cited in note 11 *supra.*

[13]See also *Gibson v. Commissioner,* T.C. Memo. 1981–668; *Diab v. Commissioner,* T.C. Memo 1979–475, affd. without published opinion 688 F.2d 842 (7th Cir. 1982); *Lesslie v. Commissioner,* T.C. Memo. 1977–111; *Davenport v. Commissioner,* T.C. Memo. 1975–369.

[14]See also cases cited in note 13 *supra.*

[15]See *Lesslie v. Commissioner, supra.*

benefit to the charity" test is appropriate in unreimbursed expense cases. However, we respectfully disagree with the Tenth Circuit to the extent that it applies the unreimbursed expenses analysis to the facts of the *White* case.

Where a taxpayer seeks a charitable contribution for unreimbursed expenses incident to another family member's services to a charity, as occurred in the *White* case, we must apply the contributions analysis. In cases such as *White* where the connection between the charitable service and unreimbursed expenses is attenuated because one taxpayer seeks a section 170 deduction for unreimbursed expenses, and another taxpayer, albeit a family member, renders services to a charity, the unreimbursed expenses analysis does not apply for two reasons.

First, and of primary importance, the plain meaning of the language used in section 1.170A–1(g), Income Tax Regs., does not allow a taxpayer to deduct unreimbursed expenses incident to another family member's service to a charity. The Tenth Circuit's analysis in *White* implies that, for purposes of section 170, the regulation allows the parents and son to be treated as one taxpaying unit. In this light, the nexus between the charitable service and unreimbursed expenses is maintained in that both elements originate from the family functioning as one taxpaying unit. However, it is clear that, regardless of age, individual family members are separate taxpayers. Sec. 7701(a)(14); sec. 1.6012–1(a)(4), Income Tax Regs.

Moreover, we think the regulation contemplates a more direct nexus between unreimbursed expenses and charitable service. That is, a taxpayer who has unreimbursed expenses incident to that same taxpayer's services to a charity is allowed a charitable contribution deduction for those expenses. Neither the Tenth Circuit in the *White* opinion nor petitioners have cited any case law or legislative history supporting the novel approach to section 1.170A–1(g), Income Tax Regs., articulated in *White*. Rather, all case law directed to our attention in this area has involved taxpayers incurring unreimbursed expenses incident to the rendition of services to a charity by those same taxpayers.[16] Accordingly, in *White* the

---

[16]We have found only one case dealing with a parent seeking a charitable contribution deduction for unreimbursed expenses incident to her son's services to a charity. *Tate v. Commissioner*, 59 T.C.

taxpayers' son had unreimbursed expenses[17] incident to rendering missionary services to the LDS Church. Therefore, the taxpayers' son would be allowed a deduction for such expenses under the regulation. The regulation does not apply to taxpayers who themselves render no services to a charitable organization. Similarly, since the petitioners did not render services or incur unreimbursed expenses, they are not allowed a section 170 deduction under this regulation.

Second, an implication of the Tenth Circuit's analysis in *White* is that both parents and son, under certain circumstances, may be allowed a charitable contribution deduction for the same expenditure. While the *White* case stands for the proposition that parents may deduct payments to sustain their son as a church missionary, the opinion does not specifically preclude the son from also taking a deduction for his unreimbursed expenses as allowed by section 1.170A–1(g), Income Tax Regs. Although it is not unreasonable to assume that the *White* court contemplated that only one taxpayer would receive a section 170 deduction, to ensure such a result, respondent must consider which taxpayer in each family is rendering services, incurring unreimbursed expenses, and claiming a charitable contribution deduction in every case. The resulting administrative burden on respondent is onerous and unjustified.

We see no reason to deviate from the contributions analysis as originally applied in *Brinley I* since the unreimbursed expenses analysis does not apply. Under the contributions analysis, in order to determine petitioners' intent in making such contributions, we must determine whether the LDS Church had control over the contributed funds. See the *Kluss v. Commissioner, Peace v. Commissioner, Thomason v. Commissioner,* and *Morey v. Riddell,* cases, *supra.* Clearly, the LDS Church did not have direct control over the contributed funds

---

543 (1973). In *Tate,* we held that "the 46-day expedition to Europe was primarily a vacation, sightseeing, and cultural trip for the teenagers. It was so advertised." 59 T.C. at 550. Thus our analysis turned on who primarily benefited from the unreimbursed expenses. We did not consider the attenuated connection between the unreimbursed expenses and the charitable services. We choose not to follow *Tate* to the extent it is inconsistent, if at all, with our holding in the instant case.

[17]The *White* opinion implies that the taxpayer parents incurred the unreimbursed expenses. We disagree. We think it more accurate to describe such expenses as being incurred by the taxpayers' son.

because petitioners transferred the $942 to their son and the travel agent.

However, petitioners contend that they contributed funds to their son and the travel agent as representatives of the LDS Church. In support, petitioners cite *Winn v. Commissioner, supra.* In *Brinley I*, we found that *Winn* was distinguishable because funds were handled by a church official, whereas the funds in the instant case went directly from petitioners to their son and the travel agent without any intervention by the LDS Church.

In *Winn*, the taxpayers donated funds to a church-sponsored drive to raise money for a particular missionary. The taxpayer gave a $10,000 check to an elder of the church. The missionary to receive the taxpayer's contribution was the elder's daughter. The elder deposited the check in the personal bank account of the missionary. We denied the taxpayers' claimed charitable contribution deduction for $10,000 because we determined the church never received, controlled, or had use of the $10,000. We found that the church elder was acting as a mere conduit to channel distributions by the church, and the elder's role as conduit did not demonstrate adequate control by the church to allow a deduction. 67 T.C. at 510–511.

In reversing this Court, the Fifth Circuit reasoned that such a contribution still would be "to or for the use of" a charitable entity despite the fact that the donor controlled which of the charitable entity's purposes would receive the exclusive benefit of the gift. Petitioners argue that *Winn* supports a charitable contribution deduction despite the LDS Church's lack of control over the taxpayer's contribution. However, the Fifth Circuit clearly outlined three elements necessary for the taxpayer's $10,000 contribution to be deductible under section 170(c):

> Proof that the church in Benoit sponsored "Sara Barry Days" for the express purpose of collecting funds for this part of its work, *that an officer of that church took the funds donated and dealt with them as the church wished,* and that the funds went to the support of the work the church intended is sufficient to establish that the funds were donated for the use of the Benoit Presbyterian church. * * * [595 F.2d at 1065; emphasis added.]

Petitioners contend that by contributing funds to their son they have satisfied the second element of the *Winn* test since their son served as a missionary and, therefore, an agent of the LDS Church.

We disagree with petitioners. First, the *Winn* test specifically requires an official of the charitable organization to receive the funds. Petitioners failed to donate funds to an LDS Church official. Second, the policy in *Winn* of requiring a church officer to receive the funds is to allow the charitable organization to control the contribution. In theory this allows the church, acting through its officer, to direct contributions for specific purposes. This policy is not served where funds are given directly to the missionary.[18]

Thus, we hold that the contributions analysis is appropriate in the instant case, and since petitioners have not satisfied the "intent to benefit the charity" test as evidenced by the control requirement, petitioners are not entitled to a charitable contribution under section 170. We reaffirm our opinion in *Brinley I.*

*An appropriate order will be issued.*

Reviewed by the Court.

FAY, SIMPSON, STERRETT, GOFFE, WILES, WILBUR, CHABOT, NIMS, PARKER, WHITAKER, KÖRNER, SHIELDS, HAMBLEN, COHEN, CLAPP, and JACOBS, *JJ.,* agree with this opinion.

SWIFT, *J.,* did not participate in the consideration of this case.

---

[18]Having found the Fifth Circuit's decision in *Winn* to be distinguishable, we need not express our views as to whether we agree with that decision.