Harold **DAVIS** and Enid Davis, Plaintiffs,

v.

**UNITED STATES of America,** Defendant.

Civ. No. 85–4106.

United States District Court, D. Idaho.

July 15, 1987.

during the sons' missionary service for the Church of Jesus Christ of Latter Day Saints (Mormon Church).

*Factual Background*

Plaintiffs seek refund of federal income taxes paid for taxable years 1980 and 1981 in the amounts of $1,779.71 and $2,613.10, respectively. These refund claims are based on the plaintiffs' claim that the funds they sent to their sons while the sons served as missionaries of the Mormon Church qualify as charitable contributions which are deductible under Section 170 of the Internal Revenue Code of 1954.

Plaintiffs have two sons, Benjamin and Cecil, who were raised as members of the church. In 1979, Benjamin was chosen as a missionary by church officials and notified that he would serve his mission duty in New York. During 1980 and 1981, plaintiffs transferred to Benjamin's personal checking account $3,480.89 and $4,135.00. Benjamin used these moneys to pay for rent, food and transportation while he was on mission. Benjamin also spent approximately $20.00 per month to purchase religious tracts and other materials used in his missionary work. At no time during his mission service did Benjamin receive charitable contributions from third parties which he accepted on behalf of the church and deposited into a church-controlled bank account. Moreover, Benjamin was not required to turn over to the church the funds in his personal account not expended by him when he terminated his mission and returned to Utah. Benjamin had no unexpended funds when he terminated his mission service.

In 1980, Cecil Davis applied to become a missionary for the Mormon Church. Cecil was notified in 1981 that he had been called to missionary service and began serving his mission in New Zealand. During 1981, plaintiffs transferred to Cecil's personal checking account $1,518.00. Cecil primarily used this money to pay for rent, food and transportation and personal needs while he was on his mission. Cecil spent nothing for religious tracts or materials. As with Benjamin, Cecil never received

Bart M. Davis, Weinpel, Woolf, Just, Combo & Davis, Idaho Falls, Idaho, Wilford W. Kirton, Jr., Raeburn G. Kennard, Robert P. Lunt, Kirton, McConkie & Bushnell, Salt Lake City, Utah, for plaintiffs.

Maurice O. Ellsworth, U.S. Atty., D. Idaho, F. Michael Kovach, Jr., Trial Atty., Tax Div., U.S. Dept. of Justice, Washington, D.C., for defendant.

### MEMORANDUM OPINION AND ORDER

RYAN, District Judge.

## I. INTRODUCTION

This matter is before the court on cross-motions for summary judgment by the United States and Harold and Enid Davis. This action stems from the Internal Revenue Service's (IRS) denial of the plaintiffs' claim for charitable contributions based upon expenses they paid for their sons

charitable contributions from third parties which he accepted on behalf of the church and deposited into a church-controlled bank account or did he turn over any of his unexpended funds to the church following termination of his mission.

On April 16, 1984, plaintiffs filed with the Ogden Service Center an amended United States individual income tax return Form 1040X for the years 1980 and 1981, claiming as additional charitable contributions $3,480.39 and $4,882.00 which they paid to their sons during the sons' missionary service. On January 30, 1985, the Service Center advised plaintiffs that no refunds would be granted. Plaintiffs' attorney requested that the claims be disallowed so that this suit could be filed. This was done on April 12, 1985. In September of 1986, plaintiffs filed a second set of amended returns limiting their charitable deductions to the amounts "requested" by the church and correcting the number of dependents claimed for each year.

## II. LEGAL ANALYSIS

The federal regulations pertinent to this action are set forth at 26 U.S.C. § 170 and 26 C.F.R. § 1.170A–1. Section 170 of the Internal Revenue Code provides, in part:

(1) General Rule. There shall be allowed as a deduction any charitable contribution (as defined in subsection (c)) payment of which is made within the taxable year. A charitable contribution shall be allowable as a deduction only if verified under regulations prescribed by the Secretary ...

....

(c) Charitable contribution defined. For the purposes of this section, the term "charitable contribution" means a contribution or gift to or for the use of—

....

(2) A corporation, trust, or community chest, fund or foundation—

....

(B) organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes....

26 U.S.C.S. § 170 (1974). The Mormon church is an organization listed on the Internal Revenue Service Publication No. 78, Cumulative List of Organizations, contributions to which are deductible under Section 170.

Title 26 C.F.R. § 1.170A–1, provides in part:

(a) *Allowance of deduction.* Any charitable contribution, as defined in section 170(c), actually paid during the taxable year is allowable as a deduction in computing taxable income irrespective of the method of accounting employed or of the date on which the contribution is pledged....

....

(g) *Contributions of services.* No deduction is allowable under section 170 for a contribution of services. However, unreimbursed expenditures made incident to the rendition of services to an organization contributions to which are deductible may constitute a deductible contribution. For example, the cost of a uniform without general utility which is required to be worn in performing donated services is deductible. Similarly, out-of-pocket transportation expenses necessarily incurred in performing donated services are deductible. *Reasonable expenditures for meals and lodging necessarily incurred while away from home in the course of performing donated services also are deductible.* For the purposes of this paragraph, the phrase "while away from home" has the same meaning as that phrase is used for purposes of section 162 and the regulations thereunder....  (emphasis added)

Thus, under the applicable provisions of the revenue code and treasury regulations, a taxpayer is permitted to deduct as a charitable contribution payments made "to or for the use of" a qualified charity. This includes "unreimbursed expenditures" which are incurred by the taxpayer while providing services to the particular charity.

Plaintiffs argue, in support of their motion, that the payments they made to support their sons' missionary services were payments "for the use of" the church as

set forth in 26 U.S.C. § 170. It is further asserted that those payments qualify as "reasonable expenditures" incurred while providing services to the church.

The position taken by the plaintiffs finds support in two recent federal court opinions from the Tenth and Fifth Circuits. In *White v. United States*, 725 F.2d 1269 (10th Cir.1984), parents of a 19-year-old missionary serving the Mormon Church claimed an income tax deduction under Treasury Regulation 1.170A–1(g) for expenditures they made at the request of the Mormon Church to support their son's missionary work. The Tenth Circuit, in rejecting the government's argument that the church itself must have control over the expenditure of the funds if the donor is to receive the deduction, applied a "primary benefit" test. That is, the court focused on whether the donor's intent was charitable and whether the primary purpose of the expenditure was to further the aims of the charitable organization or simply to benefit the spender. Based upon this test, the court found that when payments by parents are made for part of the costs of necessary travel and for all of the living expenses of a dependent member of the taxpayer's household serving as a full-time church missionary away from home, that the expenditure was deductible because the expenditure primarily served the church.

In *Brinley v. Commissioner of Internal Revenue*, 782 F.2d 1326 (5th Cir.1986), the Fifth Circuit held that the test of whether a parent's contribution to their son's missionary service was deductible was a test of causation; that is, whether the charitable work was the cause of the payment. Under this test, the burden would be on the taxpayer to show that a particular payment primarily benefited a charitable organization and did not simply benefit a particular individual. The court went on to hold that "nothing on the face of § 1.170A–1(g) ... limit[ed] deductions for expenditures incurred in the rendition of charitable work *to the person who actually performs the service.*" *Id.* at 1332 (emphasis added).

This court, of course, is not bound by the rulings of the Tenth and Fifth Circuits.

The Ninth Circuit has had an opportunity to set forth the legal standard that will be applied in determining what is a charitable contribution pursuant to 26 C.F.R. § 1.170A–1(g). In *Babilonia v. Commissioner of Internal Revenue*, 681 F.2d 678 (9th Cir.1982), the circuit applied the "intent" or "motive" test that was set forth in the *White* decision; that is, was the taxpayer's primary motive in performing services to advance personal interest or to advance those of the charitable organization? However, there is an important factual distinction between the *Babilonia* decision and the *White* and *Brinley* decisions. In *Babilonia*, the taxpayers were seeking a charitable deduction pursuant to 26 C.F.R. § 1.170A–1(g) for expenses they personally incurred while performing services for a charity and not for expenses of a third party as in the *White* and *Brinley* cases.

The position of the government is that the primary benefit test is inapplicable in this case because plaintiffs' payments are to third parties. In his dissent in the *Brinley* decision, Judge Robert Hill noted that:

"With the exception of the majority's opinion [in *Brinley*] and that of the Tenth Circuit in *White*, the case law, including this circuit, has consistently employed the primary benefit test only in those instances where the taxpayer has sought a charitable deduction for his own expenses.... *See e.g., Babilonia v. Commissioner*, 681 F.2d 678, 679 (9th Cir. 1982); *Sheffels v. United States*, 264 F.Supp. 85, 89 (E.D.Wash.1967), *aff'd*, 405 F.2d 924 (9th Cir.1969); *Orr v. United States*, 343 F.2d 553, 557 (5th Cir. 1965)...."

*Brinley v. Commissioner*, 782 F.2d at 1338 (footnote and citations omitted).

Indeed, while Section 1.170A–1(g) does not "expressly" limit deductions for expenditures incurred in the rendition of charitable work to the person actually performing the service, such a limitation is implicit in the language of the regulation. The only individuals who performed donated services "away from home" were the missionary sons, not the parents. This court should not stray from the clear lan-

guage of the regulation to permit taxpayers, who are not performing the donated services away from home, to claim a charitable deduction pursuant to 26 C.F.R. § 1.170A–1(g).

As noted by Judge Hill in his dissent in *Brinley*, application of the primary benefits test to expenses incurred by an individual *other* than the taxpayer creates incentives for taxpayer abuse. The dissent set forth the following analysis:

> [W]hen the taxpayer deducts another person's expenses, a shifting of deductions occurs that does not occur when the taxpayer deducts his own expenses. Taxpayer parents in high income tax brackets may be tempted to shift their lower income bracket children's deductions to themselves. Without the oversight of the charitable organization, parents could contribute larger than necessary amounts to their missionary child and claim the money was contributed to support charitable activities. If a donor can contribute directly to the missionary, the IRS will be forced to investigate the adequacy of the organizational oversight provided by the charity; this places a heavy burden on an already overwhelmed IRS facing reduced investigatory resources. However, if the money must first go to the charity, the charity will see that the money is spent for the benefit of the charity and not an overcontribution for the child's benefit....

> [T]he use of the primary benefit test also causes an increased chance of improper double deductions. Both the donor patient [sic] and the missionary child may attempt to deduct the expenses incurred by the child. However, if the money is given to the Church, this potential problem is avoided because the missionary cannot take the deduction since the expenses will not be unreimbursed. Under the majority's position, the IRS will be forced to compare the tax returns of parents and missionary children to determine if double deductions are impermissibly occurring.

*Brinley v. Commissioner,* 782 F.2d at 1338.

■ This court agrees with the *Brinley* dissent that the primary benefit test is not the appropriate test to be applied when a taxpayer attempts to deduct expenses incurred by another. It applies only in those situations where the taxpayer seeks a charitable deduction for his own expenses. The limitation of the primary benefit test to the above situation not only comports with the language of 26 C.F.R. § 1.170A–1(g), but will also serve to prevent the potential taxpayer abuses discussed above.

The appropriate test to be applied when a taxpayer asserts that he has made a payment to another individual "for the use of" the charitable organization is the control test. *See Winn v. Commissioner,* 595 F.2d 1060 (5th Cir.1979); *Tripp v. Commissioner,* 337 F.2d 432 (7th Cir.1964); *Peace v. Commissioner,* 43 T.C. 1 (1964); *Thomason v. Commissioner,* 2 T.C. 441 (1943). Under this test, a donation is "for the use" of the charitable organization when the charity has sufficient possession of the contribution so that it has discretion as to the use to which the donated funds will be put.

■ In the instant case, it is clear that the missionary sons had true "control" over the funds in question. There was no common pool from which disbursements were made to the Davis boys by the church. Contributions were placed directly in the sons' personal checking accounts by their parents. The particular use to which the funds were put was solely within the power of the missionary. The sons did not have to account for any surplus funds they might receive from their parents or other parties, nor were they required to turn over to the church funds in their personal accounts not expended when the mission was terminated. It appears from the record before the court that the only role the church played in the distribution of the funds to the missionaries was to provide a projected budget range that would be needed for the particular area in which the missionary would be serving. Beyond that information provided by the church, there is no indication that the church was involved in any way in controlling how the missionary's money was spent.

## Conclusion

■ In summary, the court finds that the plaintiffs cannot deduct as "unreim-

bursed expenses" payments made to their sons while the sons were serving on a Mormon mission. Such unreimbursed expenses may be deducted only by the individual "performing services away from home." Moreover, the taxpayer actually incurring the expenses must demonstrate that his primary motive in performing the services was to benefit the charity. *Babilonia v. Commissioner*, 681 F.2d at 679. When a taxpayer asserts that a contribution benefiting a specific individual qualifies as a contribution made "for the use of" a charitable organization, the control test applies. A charity has "control" over a contribution when it has complete discretion as to how those funds will be used. For the reasons stated in this opinion, plaintiffs cannot properly claim a deduction under 26 U.S.C. § 170 or 26 C.F.R. § 1.170A–1(g).

### III. ORDER

Based upon the foregoing and the court being fully advised in the premises,

IT IS HEREBY ORDERED that defendant's Motion for Summary Judgment should be, and is hereby, GRANTED.

IT IS FURTHER ORDERED that plaintiffs' Cross Motion for Summary Judgment should be, and is hereby, DENIED. Judgment will enter accordingly.