GEORGE E. PEACE AND LILLIAN W. PEACE, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 468–63, 1391–63.   Filed October 2, 1964.

*William T. Walker,* for the petitioners.
*Gordon B. Cutler,* for the respondent.

DAWSON, *Judge:* Respondent determined the following deficiencies in petitioners' income tax:

| Year | Deficiency |
| --- | --- |
| 1959 | $760.68 |
| 1960 | 1,100.89 |
| 1961 | 260.00 |

By amended answer, respondent increased the deficiency for 1961 to $585. Petitioners have conceded that a portion of the increased deficiency is correct since they cannot substantiate $400 of a claimed $2,250 charitable contribution. Petitioners have also conceded certain adjustments made for 1960. The only issue remaining for decision is whether petitioners' contributions in 1959, 1960, and 1961 were made to or for the use of the Sudan Interior Mission.

### FINDINGS OF FACT

The stipulated facts are hereby found accordingly.

Petitioners George E. Peace (hereinafter sometimes referred to as petitioner) and his wife, Lillian W. Peace, reside at 4520 NE. 22d Road, Fort Lauderdale, Fla. Petitioners filed their joint Federal income tax returns for the years 1959 and 1960 with the district director of internal revenue, Jacksonville, Fla., and their joint Federal in-

1

come tax return for the year 1961 with the district director of internal revenue, Cleveland, Ohio.

The Sudan Interior Mission, Inc. (hereinafter referred to as the mission), is and was a corporation organized and operating exclusively for religious and charitable purposes, within the meaning of section 170(c)(2), I.R.C. 1954. The chief object of the mission is the extension of Christianity in foreign countries, through the work of missionaries in those countries. During the years here involved, the mission had between 1,200 and 1,300 missionaries. The mission has some hospitals in Africa, including 8 leprosaria in west Africa and 2 in east Africa, and has clinics at most of its approximately 200 missionary stations.

The gross income of the mission was almost $4 million yearly in 1959, 1960, and 1961. The mission, which is interdenominational, is dependent for its support entirely upon freewill offerings of individuals, groups, and churches. A substantial portion of the mission's income is obtained from visitations throughout the United States by missionaries on furlough from their work in the field (foreign countries). The missionaries visit churches, groups, and individuals, making known the mission's needs for funds, in line with the mission's policy of "full information and no solicitation."

Much of the mission's income is devoted to the support of the missionaries in foreign countries. It is the practice of the mission to estimate the cost of a missionary's yearly support. During 1959, 1960, and 1961 the estimated yearly cost was $1,600 for each missionary. Allowances for missionaries in any country were identical, although allowances might vary from one country to the next.

Funds are received by the mission in three categories: General undesignated funds, funds for support, and special funds. General undesignated funds are used to meet current expenses. Funds received for support are divided into three portions: 50 percent going into a support pool, 20 percent into a mission passage fund which cares for missionaries' travel to and from furloughs, and 30 percent into a general fund used for missionaries' housing, medical and administrative expenses, social security payments, and various other things. Special funds include gifts designated for special projects and personal transmission gifts sent directly to the missionaries concerned.

During 1959, 1960, and 1961 Harold Hide,[1] Peter Klassen, Mary Thornton, and Ida Trapp were missionaries for the mission, except that Ida Trapp was on a leave of absence from November 1, 1961, through at least December 31, 1961.

In 1959, 1960, and 1961 the petitioner sent 23 checks to the mission. Each check was made payable to the order of the "Sudan Interior

---

[1] Sometimes spelled Hyde.

Mission." Each check constituted a payment made in the taxable year in which it was issued. On the lower left-hand corner of the face of 11 of the checks, the petitioner wrote the names of the four missionaries, Harold Hide, Peter Klassen, Mary Thornton, and Ida Trapp. On the lower left-hand corner of the face of one of the checks, dated November 10, 1961, he wrote the names of three of the missionaries, omitting that of Ida Trapp.

The 1959 check to the mission, dated February 5, 1959, was for $2,400. In 1960 there were 12 checks, each in the amount of $200, sent to the mission. In 1961 there were seven checks in the amount of $200 and three checks in the amount of $150 sent to the mission.

For each of the 23 checks, the mission furnished the petitioners a receipt. The following appears on the face of the 1959 receipt:

```
Support:
    Miss Ida Trapp_____ $600
    Miss Mary Thornton_____  600
    Mr. Harold Hide_____  600
    Mr. Peter Klassen_____  600
```

With the exception of the last three receipts in 1961, the following, although not necessarily in the same order, appears on the face of each receipt in 1960 and 1961:

```
    Box 2, 4, 5—Miss I. Trapp_____ $50
        2, 4, 5—Miss M. Thornton_____  50
        2, 4, 5—Mr. H. Hide_____  50
        2, 4, 5—Mr. P. Klassen_____  50
```

On the face of each receipt, box 2 was designated "Support Allowance" and was allocated $25 per person; box 4 was designated "Maintenance From Support" and was allocated $15 per person; and box 5 was designated "Passage From Support" and was allocated $10 per person. The last three receipts in 1961 are identical except for the omission of Ida Trapp's name and the equal allocation of $150 to the other three named missionaries.

In a letter, dated February 5, 1959, accompanying the 1959 check, petitioner stated:

Enclosed please find check for $2,400.00 for our Missionaries Ida Trapp, Mary Thornton, Harold Hide, and Peter Klassen for the year 1959.

In a letter dated February 17, 1960, petitioner wrote to the mission:

As I am retired now and my income is less than half of previous I am rearranging my contributions. I still want to keep Ida Trapp, Mary Thornton, Harold Hide, and Peter Klassen at $600 per year. I will have to send it monthly. * * *

Also I have joined Bethany Presby Church in Ft. Lauderdale and they have a large missionary program of which I feel I should contribute more than I do. * * *

I would like to put the $1,200 for Mary Thornton and Harold Hide thro [sic] the Bethany Church from Mrs. Peace and I as of now * * *. We would still take care of Ida and Peter ourselves.

In reference to petitioner's letter of February 17, 1960, Albert H. TerMeer (hereinafter referred to as TerMeer), secretary of the mission, replied, on March 7, 1960:

Thank you for your good letter of February 17th, together with your check in the amount of $200. We are very gratefully acknowledging your contribution to the supports of these four missionaries by our receipt No. D2547.

We note that you say that you would like to send your contributions monthly from now, and that is of course very agreeable to us, if it makes it more convenient for you.

We note further that you would like to put through the $600 each for Mary Thornton and Harold Hide through the Bethany Church, but that you will continue to care for Miss Trapps and Mr. Klassens $600 each per year directly through this office. This also is quite agreeable to us, and thank you for letting us know.

Mission-form remittance envelopes in which were enclosed the checks sent by the petitioner to the mission in September, November, and December 1960 provided:

Remittance for_____
                                 (Kindly print full name of Missionary)
To be designated as follows:

    Support_____ Miss Ida Trapp
                                        Miss Mary Thornton
                                        Mr. Harold Hyde
                                        Mr. Peter Klassen

The checks transmitted to the mission in September and December 1960 were not among the 11 on which the names of the missionaries had been written in the lower left-hand corner.

In a letter dated September 29, 1961, accompanying a check on which no names had been written, the petitioner states:

We have supported Miss Trapp for 20 years and feel she has done a remarkable job for the Lord. She intimated she might take position in Montana as head of hospital. So am sending check for support of Mary Thornton, Harold Hide and Peter Klassen. We are at present burdened for a Bible teacher and Evangelist in the United States and feel he is doing a remarkable job so have taken him as our home Missionary as I believe we are close to the End and America needs the gospel.

TerMeer responded on November 8, 1961:

Thank you so much for your contribution of $150.00 * * *

We are sending you herewith our official receipt No. E26873 for the support of $50.00 each to Miss Thornton, Harold Hide and Peter Klassen. We thank you very much for your fellowship with us in the support of these missionaries, and know that you will be praying the Lord's bless upon their separate ministries.

Now with regard to Miss Trapp * * *. She has asked for a leave of absence from the Mission as of November 1st, which means that from now on we will not be financially responsible for her in any way, and the responsibility of each donor to her support will also be notified that support is no longer needed for her. * * * We do thank you for your fellowship in her support for this long time.

On a mission-form remittance envelope sent in November 1961 to the mission, the petitioner wrote the following:

Enclosed find check for $150
    50  Harold Hide
    50  Mary Thornton
    50  Peter Klassen
I would prefer the whole amount in future to go to their support only do not break it up.

TerMeer wrote petitioners on December 20, 1961, that:

the Leave of Absence [requested by Ida Trapp] has been granted effective November 1st, 1961.

We have appreciated very much your fellowship in her support during the time she has been serving * * *. During the time she is on a Leave of Absence she will not be receiving allowances from the Mission, and so we will not require further support for her until such time as she is again able to return to the field. Possibly you might like to transfer this to another of our workers who has such a need, and if so, we will be glad to give you further information.

In a letter dated December 21, 1961, Mr. Fred Zabel of the mission wrote in reply to petitioner's request on the mission-form remittance envelope sent in November 1961:

Thank you for your recent gift of $150 toward the support of Mr. Hyde, Mr. Klassen and Miss Mary Thornton for which we are enclosing receipt No. E30358.

In this letter I am sending to you a little pamphlet called "Missionary Maintenance" which shows the breakdown of support figures. All of the money that you send in designated support is actually for the support of the missionary as described on Page 5 of this pamphlet which I have encircled the portion that I believe you would want to read.

If after reading this pamphlet there are some questions in your mind that you would like to ask, please write us a line and we shall be most happy to try and answer. We do want your gifts to go exactly as you have designated them.

The pamphlet entitled "Missionary Maintenance" states the mission's policy as follows:

DISTRIBUTION OF FUNDS

All money received is prayerfully distributed. Contributions designated by the donor to a specific department of the work or to an individual are applied as designated. The General Fund, from which the general administrative expenses are met, receives most undesignated and sundry contributions.

It is the aim of the Mission that as far as possible each missionary going forth have his full support promised. The money thus received is divided equally for Personal Allowance and Service Support. The Personal Allowance fund is divided equally each month among all the missionaries, and fluctuates in proportion to the amount available. This is the equivalent of the missionary's "salary" and is for his personal use. The actual sum received varies slightly on different fields but the fund is shared in such a manner as to enable each one to enjoy as nearly as possible the same purchasing power.

From the half that goes into Service Support, appropriate sums are set aside for passage and general maintenance requirements, from which medical and other services not covered by the allowances are paid. At the end of each month

any balance in the General Fund is transferred to the Allowance fund and augments the amount available for the missionary's monthly allowance.

### SHARE AND SHARE ALIKE

By sharing funds this way, with each member contributing his support funds to the general family welfare, the Mission is happily following the example of the early church * * *

### WORKERS TOGETHER WITH GOD

\*  \*  \*  \*  \*  \*  \*

There are missionaries accepted by the Mission who are waiting to sail but who need financial support. Perhaps God would have you share the burden by undertaking partial or full support of one of these, to be your personal gospel representative in Africa.

Or perhaps God would have you go. The cry for workers on all our fields is a daily heartache. There are many millions of people in Mission fields alone who do not know the gospel—there is no one to tell them.

It was the policy of the mission that each of the missionaries have promised from donors the amount of his annual support. It is a frequent practice for contributors to indicate that their contributions are for support, measured in terms of the support of individual missionaries. Petitioners measured their contributions to the mission in terms of partially meeting the support allowances for Harold Hide, Peter Klassen, Mary Thornton, and Ida Trapp.

Petitioners were familiar with the financial policy of the mission as to the disposition of contributions by donors designating certain missionaries to be supported.

The petitioners' contributions were all placed in a common pool used for missionary support and were disbursed in accordance with the policy of the mission as set out above under the designation "Distribution of Funds" in the mission publication "Missionary Maintenance."

The mission-form remittance envelopes included a place for "Personal Gift (Transmission)" which, on the envelopes in evidence, was not specified by the petitioner. Box 9 of the mission receipt is for "Transmission." On no receipt is any part of the petitioners' contribution attributed to box 9.

On occasion petitioners did make personal gifts to the missionaries. Cash was given to Mary Thornton personally when she visited Florida. Money was sent to Ida Trapp to enable her to buy a motorcycle. Money was also sent to a missionary named Janet Traup to enable her to buy a typewriter. No deduction was claimed for any of these gifts.

During 1959, 1960, and 1961 it was the petitioners' intention that their contributions be credited to the support allowance of the missionaries Harold Hide, Peter Klassen, Mary Thornton, and Ida Trapp. Petitioners knew and intended that their contributions would go into

a common pool to be administered by the mission and distributed in accordance with the mission's policy.

OPINION

The tax-exempt status of the mission has been stipulated and accordingly is not in issue. The sole question is whether petitioner's contributions were "to or for the use of" [2] the mission, so as to be deductible under section 170, I.R.C. 1954.

The respondent contends that the contributions are not deductible because they were made for the support of certain designated individuals, rather than to or for the use of the mission. In the respondent's own words, with which we have concurred, *S. E. Thomason*, 2 T.C. 441, 444 (1943), "the phrase 'for the use of' seems to carry with it a right of exclusive appropriation or enjoyment of the thing donated." I.T. 1867, II-2 C.B. 155. See also Rev. Rul. 60-367, 1960-2 C.B. 73; Rev. Rul. 61-66, 1961-1 C.B. 19. The mission had exclusive control, under its own policy, of both the administration and distribution of the funds donated by the petitioners. That petitioners designated three or four missionaries to be supported by their donations was no more than a manifestation of the petitioners' desire to have their donations credited to the support allowance of those individuals. An examination of the totality of the facts and evidence clearly demonstrates that the petitioners knew and intended that their funds would go into a common pool to be distributed only as the mission itself determined.

In support of his contention, respondent relies on such cases as *Fred Dohrmann, Jr.*, 18 B.T.A. 66 (1929); *Cap Andrew Tilles*, 38 B.T.A. 545 (1938), affirmed on other grounds 113 F. 2d 907 (C.A. 8, 1940); *S. E. Thomason, supra*; and *Estate of Margaret E. Callaghan*, 33 T.C. 870 (1960). His reliance is clearly misplaced, for in all of those cases it was found that the intent of the donor was that the gift, bequest, or contribution go directly to or be used solely for certain

---

[2] SEC. 170. CHARITABLE, ETC., CONTRIBUTIONS AND GIFTS.

(c) CHARITABLE CONTRIBUTION DEFINED.—For purposes of this section, the term "charitable contribution" means a contribution or gift to or for the use of—

(1) A State, a Territory, a possession of the United States, or any political subdivision of any of the foregoing, or the United States or the Distrct of Columbia, but only if the contribution or gift is made for exclusively public purposes.

(2) A corporation, trust, or community chest, fund, or foundation—

(A) created or organized in the United States or in any possession thereof, or under the law of the United States, any State or Territory, the District of Columbia, or any possession of the United States;

(B) organized and operated exclusively for religious, charitable, scientific, literary or educational purposes or for the prevention of cruelty to children or animals;

(C) no part of the net earnings of which inures to the benefit of any private shareholder or individual; and

(D) no substantial part of the activities of which is carrying on propaganda, or otherwise attempting, to influence legislation.

8

specified individuals. See also Rev. Rul. 57–211, 1957–1 C.B. 97; Rev. Rul. 54–580, 1954–2 C.B. 97; *Cooper* v. *Commissioner*, 264 F. 2d 889 (C.A. 4, 1959), affirming a Memorandum Opinion of this Court. In the instant case, however, we have found as a fact, to reiterate, that it was the petitioners' intention that their funds go into a common pool to be administered and distributed by the mission as it desired.

Finally, we believe respondent is hoist with his own petard. In Rev. Rul. 62–113, 1962–2 C.B. 10, a problem very similar to the instant case was considered. The taxpayer's son, a missionary, had as his sole sources of support (1) amounts provided by the taxpayer and (2) reimbursements made to him by the church from its missionary fund. The taxpayer made contributions to the church fund both before and after his son became a missionary. The ruling, in answer to the question of whether "the monies contributed by the taxpayer to the fund established by the local congregation [are] deductible as charitable contributions," states:

The test in each case is whether the organization has full control of the donated funds and discretion as to their use, so as to insure that they will be used to carry out its functions and purposes.

In the instant case, the son's receipt of reimbursements from the fund is alone insufficient to require a holding that this test is not met. Accordingly, unless the taxpayer's contributions to the fund are distinctly marked by him so that they may be used only for his son or are received by the fund pursuant to a commitment or understanding that they will be so used, they may be deducted by the taxpayer in computing his taxable income in the manner and to the extent provided by section 170 of the Code.

It seems to us that respondent has chosen the wrong case to be puristic in his effort to collect the sovereign's revenue. In view of our findings, nothing further need be said. We decide this issue for petitioners, but because of certain concessions made by them,

*Decisions will be entered under Rule 50.*