ESTATE OF RONALD E. GIBSON, SR., DECEASED, AUDREY J. GIBSON, PERSONAL REPRESENTATIVE AND AUDREY J. GIBSON, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Estate of Gibson v. Commissioner
Docket No. 8811-80.
United States Tax Court
T.C. Memo 1981-668; 1981 Tax Ct. Memo LEXIS 75; 42 T.C.M. (CCH) 1702; T.C.M. (RIA) 81668; November 18, 1981. Audrey J. Gibson, pro se. William P. Hardeman, for the respondent. DAWSON
MEMORANDUM FINDINGS OF FACT AND OPINION DAWSON, Judge: Respondent determined a deficiency of $ 5,913.43 in petitioners' Federal income tax for the year 1976. No concessions were made by the parties prior to the trial of this case. However, respondent has made some concessions in his brief with respect to deductions claimed by the petitioners. The issues that remain for decision are (1) to what extent the petitioners have substantiated their claimed charitable contributions for 1976 and a carry-over deduction for contributions made for years prior to 1976; (2) whether petitioners are entitled to deduct automobile travel expenses of $ 3,905 under section 162 [1] as ordinary and necessary business expenses; and (3) whether petitioners have substantiated additional deductions *77 for medical expenses. To facilitate the disposition of these issues the necessary findings of fact will be amalgamated herein with the application of the law. Some of the facts have been stipulated and are so found. The legal residence of the Estate of Ronald E. Gibson, Deceased, and Audrey J. Gibson was in Espanola, New Mexico, when the petition was filed in this case. A timely joint Federal income tax return for 1976, which was prepared by H & R Block Company, was filed by them with the Internal Revenue Service Center at Austin, Texas. On March 12, 1980, respondent issued his notice of deficiency which disallowed various claimed deductions with the following explanations: You are allowed a deduction of $ 2,929.45 for contributions, instead of $ 14,544.00 as shown on your income tax return. Accordingly, taxable income is increased $ 11,614.55. You are allowed a deduction of zero for travel expense, instead of $ 3,905.00 as shown on your income tax return. Accordingly, taxable income is increased $ 3,905.00. You are *78 allowed a deduction of $ 68.00 for medical expense, instead of $ 186.00 as shown on your income tax return. Accordingly, taxable income is increased $ 118.00. In 1976, and for years prior thereto, Ronald E. Gibson, who died on March 22, 1977, and Audrey J. Gibson (herein referred to as the petitioners) were ordained ministers of the World for Christ Ministry, a tax exempt religious organization which was qualified under section 501(c)(3). The Wordl for Christ Ministry has its principal offices and headquarters on 120 acres of land located near Deming, New Mexico. The headquarters area, which consisted of a tabernacle, chapel, baptismal pool, dining hall, and apartments and living quarters, is known as the Christ Light Community (CLC). The World for Christ Ministry is legally constituted under the name of New Age Church of Truth, Inc.
Petitioners, who both served without compensation as ministers for CLC, resided on a 30 acre tract of land which they owned and which was located about 25 miles from CLC. It was called Gibson Retreat. It consisted of a double-wide mobile home, two utility buildings, a root cellar and windmill. The land was purchased by petitioners in 1972 and *79 Audrey J. Gibson still owns it. Gibson Retreat is not qualified as a tax exempt religious organization under section 501(c)(3). Petitioners had their personal residence at Gibson Retreat, which was partly used for the teaching and application of their survival beliefs. Petitioners, who believed that survival, in a material sense, was part of their religion, used the Gibson Retreat property in part for organic farming. They believed that chemical fertilizers were detrimental to health. The produce raised at Gibson Retreat was given to CLC and to various church members and needy persons in the Deming area. 1. Charitable Contributios
It is settled law that petitioners have the burden of proving their entitlement to the claimed charitable contribution deductions. Welch v. Helvering, 290 U.S. 111 (1933); Calvin K. of Oakknoll v. Commissioner, 69 T.C. 770, 772 (1978); Rule 142(a), Tax Court Rules of Practice and Procedure. They must show, among other things, that their organizations were operated exclusively for religious purposes and that no part of the net earnings of the organizations inured to the benefit of private individuals. Sections *80 170(c)(2)(B) and (C); Calvin K. of Oakknoll v. Commissioner, supra.
On their Federal income tax return for 1976 the petitioners claimed itemized contributions as follows: Donee
Amount
Church
$ 264
DAV
2
World for Christ Mission
5,694
Worldwide Church of God
5
Association of Sananda
10
Happiness Is
557
Total
$ 6,532
They also claimed a carry-over for contributions of $ 45,162 from prior years, part of which they applied to 1976. The total contributions of $ 51,694 were limited to a claimed deduction of $ 14,544 (50 percent of reported adjusted gross income) and the return reflects a carry-over to future years of $ 37,150. In his notice of deficiency respondent allowed $ 2,929.45, consisting of the following: Donation of Food to
Church Convention
$ 300.00
Church
254.45
Mileage Expense
1,813.00
Telephone & Postage
562.00
A. Contributions for 1976
Based on the testimony and substantiating receipts and documents presented at the trial of this case, the petitioners are entitled to the following additional charitable contribution deductions in 1976: Donee
Amount
Understanding, Inc.
$ 56.75
New Age Church of Truth
85.00
DAV
2.00
David Ebaugh Bible School
25.00
Religious Radio Program
494.25
(Happiness Is)
Donations of Food to CLC
2,118.00
and Given to Needy Persons
Total
$ 2,781.00
*81 The first four items listed above have been conceded by respondent on brief. Petitioners submitted canceled checks written to the radio station for their weekly religious program "Happiness Is." Before they took over the program it was called "The Kingdom of Heaven Is At Hand" and was paid for by the World for Christ Ministry. The program was geared toward services at CLC. The Reverend Audrey Gibson testified that: when Mr. Gibson and I began our ministry together, we felt that it [the program] should have a change because it was too geared to one thought of ministry and we renamed it "Happiness Is", and continued on--that it would have a wider scope of ministry to all people instead of just certain doctrinal points. "Happiness Is" tried not to be so dogmatic in its religious concepts and theories, tradition wise, and we tried to make it very catholic, universal. That doctrine was not pressed but if you understand the principles of the Sermon on the Mount, which does not take a doctrinal stand in any way, it emphasizes our relationship man-to-man, humanity, how we relate to one another, and not in the respect that God is concerned about whether you like the, or you agree *82 with our doctrinal standpoint. I could mention a Baptist standpoint, Methodist. We just completely stayed away from the doctrinal side of it and tried to present a thought about what is happiness. We are persuaded that the radio program was an extension of the New Age Church of Truth ministry and that the expenses for it are deductible as a fund organized exclusively for religious and educational purposes under section 170(c)(2). The food donations present a rather close issue because the recipients were needy individuals. We think, however, that in substance the donations of food were made by petitioners to the New Age Church of Truth, Inc., and operated as the Christ Light Community, and the church, through its ministers, distributed the produce to the individuals. This conclusion seems to be supported by the testimony of Reverend Audrey Gibson and two of the ultimate recipients, Nancy Bowen and Dennis Davis. Consequently, we view the petitioners' food contributions as having been "to and for the use of" the Christ Light Community, so as to be deductible under section 170 to the extent of their fair market value. Cf. Peace v. Commissioner, 43 T.C. 1 (1964), *83 distinguishing Dohrmann v. Commissioner, 18 B.T.A. 66 (1929), relied on by respondent here. Petitioners denominated their living quarters at Gibson Retreat as a "manse" and they have claimed its total operating cost as a contribution to CLC. Respondent contends that none of these expenses are deductible as a contribution. We agree with respondent. Gibson Retreat fulfilled only the purpose of serving as petitioners' personal residence and their survival schooling program. CLC provided a manse for its residence minister on its grounds. Petitioners did not reside there even though the manse was apparently vacant and available before 1976. We hold that the utilities for Gibson Retreat and the amounts expended for supplies, repairs and maintenance there constitute nondeductible personal expenses of petitioners. See section 262. In any event, such expenditures pertaining to Gibson Retreat do not qualify as charitable contributions under section 170(c)(2) since part of its net earnings inured to the benefit of the petitioners. Petitioners also made expenditures for books on agricultural techniques, health and for various supplies and plants. These were claimed *84 as contributions to CLC. We hold that they were personal expenses and therefore not deductible as charitable contributions. B. Contribution Carryover Deduction
With respect to the claimed contribution carry-over deduction totaling $ 45,162, petitioners assert that the records were in the possession of H & R Block Company, the return preparer, and they were destroyed in Hurricane Eloise. Audrey Gibson testified that contributions were for materials to build some of the buildings at CLC. She admitted there were other contributors to CLC. No other substantiation was offered. There was an office with clerical help at CLC. Petitioners made a practice of making checks for their donations drawn to CLC or to the New Age Church of Truth, Inc. Thus it seems that petitioners' contributions to construct the buildings would not have been documented only by checks for materials. Petitioners offered no statements from CLC where records of donations might have been kept. The only document relating to this subject is a statement from the return preparer, C. T. Vaughn of H & R Block. The statement relates that records of that office were destroyed by Hurricance Eloise from 1976. It *85 states that Ronald E. Gibson "had records of contributions centered around construction of chapel-dining hall-sleeping qts & swimming pool." The statement is hearsay and is not admissible. There is no explanation as to why Mr. Vaughn, the return preparer, would have retained the records. This record is devoid of any information establishing the Reverend Ronald Gibson's contributions in money, labor or materials for the construction of the CLC buildings, and there was no attempt to reconstruct the amounts of such contributions. Moreover, Audrey J. Gibson testified that she previously agreed to the audit of their 1974 Federal income tax return when the carry-over was disallowed. Therefore, we conclude that the petitioners have failed to substantiate their claimed carry-over deduction. 2. Automobile Travel Expenses
On a statement attached to their Federal income tax return for 1976 relating to automobile expenses, petitioners claimed travel of 25,900 miles for business purposes, which they used to calculate a deduction from gross income at the rate of 15 cents per mile for 15,000 miles and 10 cents per mile for 10,900 miles. They also claimed $ 3 for parking fees and tolls. *86 Additional business expenses of $ 562 were claimed on the statement for telephone and postage. On the statement the petitioners gave the following explanation: T.P. & wife are ordained ministers. Travel at own expense in conducting meetings-convention at Tonopah, AZ. & Grand Tetons, Wy - No compensation received from church. Petitioner Audrey J. Gibson confirmed that all services provided by petitioners to CLC in 1976 were for no remuneration. She has stated in her brief that their services were "not a business but a ministry to God and, in a spiritual sense, to man." Respondent did not allow the travel expenses and the expenses for telephone and postage as ordinary and necessary business expenses of conducting a trade or business. The travel mileage was accepted and petitioners were allowed a deduction for charitable contributions for the mileage expense at the rate of 7 cents per mile. They were also allowed an additional deduction of $ 562 for telephone and postage expense as a contribution. In an effort to substantiate the automobile mileage, petitioner Audrey J. Gibson testified at the trial. She included two trips to Florida as part of the mileage, which was claimed *87 as 1,700 miles each way, or a total of 6,800 miles. Petitioners had already claimed the trips to Florida on a statement of rental income attached to their return. They claimed 9,900 miles at a rate of 15 cents per mile and that expense was not disallowed by respondent. Respondent allowed the mileage claimed of 25,900 miles at 7 cents per mile as a charitable contribution. The total deduction allowed was $ 1,813. If petitioners were allowed mileage as a business expense, it would have to be calculated differently. Andrey J. Gibson's testimony showed a total of 25,550 miles. Part of that mileage (12,900 miles) was commuting expense between Gibson Retreat and CLC, a distance of 25 miles each way. Such mileage is not an allowable deduction. Fausner v. Commissioner, 413 U.S. 838 (1973); section 262. Another part of the mileage is 6,800 miles in trips to Florida, which was allowed by respondent as 9,900 miles on the rental income schedule. In reducing the mileage figure by 6,800 miles for the Florida trips and 12,900 miles for commuting, the business miles traveled would be 5,850 miles. That mileage at a rate of 15 cents per mile would result in a deduction of *88 only $ 877.50, as compared to the $ 1,813 allowed as a charitable contribution. Furthermore, petitioners are not entitled to the business expense rate because they were not in a "trade or business" of being ministers for Federal income tax purposes. A common requirement of both section 162 and section 212 for the allowance of business expenses is that taxpayers must be engaged in a profit oriented activity. It is clear that there can be no deduction under section 162 unless the petitioners had a "trade or business" and the expenditures deducted are related thereto. Fischer v. Commissioner, 50 T.C. 164, 171 (1968). Congress intended that the profit motive must first be present in and dominate any "trade or business" before deductions may be taken. Hirsch v. Commissioner, 315 F.2d 731, 736 (9th Cir. 1963), affg. T.C. Memo. 1961-256. Accordingly, we hold that respondent correctly allowed the automobile mileage as a charitable contribution in the amount of $ 1,813. 3. Medical Expenses
Petitioners placed the deduction for medical expenses in dispute. Substantiation for medical expenses was offered. Some of the expenses were *89 claimed on their Federal income tax return for 1976 and they were not disallowed. Petitioners proved expenses for drugs of $ 24.07, which were not claimed on the return, but such amount does not exceed one percent of the reported adjusted gross income. They also proved other medical expenses of $ 27.28, which were not claimed on the return. Respondent has conceded that petitioners should be allowed the additional deduction of $ 27.28. To reflect concessions and our conclusions on the disputed issued, Decision will be entered under Rule 155. Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended and in effect for the year in issue, unless otherwise indicated.↩