JAMES F. and BETTY PATTERSON, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Patterson v. Commissioner
Docket No. 10085-84.
United States Tax Court
T.C. Memo 1987-252; 1987 Tax Ct. Memo LEXIS 252; 53 T.C.M. (CCH) 847; T.C.M. (RIA) 87252; May 14, 1987. *252 David Vandergriff, for the petitioners. Alvin O. Ohm, for the respondent. JACOBS
MEMORANDUM FINDINGS OF FACT AND OPINION JACOBS, Judge: Respondent determined *253 a deficiency in petitioners' 1980 Federal income tax in the amount of $1,072. After concession, the issues for decision are whether petitioners are entitled to claimed charitable deductions for: (1) the payment of various expenses incurred by James F. Patterson in sponsoring and coaching Patterson's Patriots, a girls' amateur softball team; (2) a donation to the Little Rock, Arkansas, YMCA softball team; and (3) the purchase of tickets to a raffle sponsored by the Western Arkansas Girls' Softball League. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts and attached exhibits are incorporated herein by this reference. James and Betty Patterson, husband and wife, resided in Fort Smith, Arkansas at the time they filed their petition in this case. Betty Patterson is a party to this proceeding only by virtue of having filed a joint return with her husband; accordingly, James F. Patterson will hereinafter be referred to as petitioner. During 1980, petitioner sponsored and coached a girls' amateur softball team, named "Patterson's Patriots" (the team). The team was comprised of fifteen girls, ages 16 through 18; petitioner's daughter, *254 Karen, was a member of the team. The team was a member of the Sebastian County Girls' Softball League (the League) and played in round-robin league games. In addition, the team participated in tournaments sanctioned by the Amateur Softball Association (the Association); the team played in no other games in 1980. Both the League and Association are exempt from Federal income tax under section 501(c)(3). [1]
Most of the girls on the team were from economically poor families. On occasion, the team played in out-of-town tournament games which required the members of the team to stay away from home overnight. On these occasions, petitioner personally paid for the team's lodging and for the cost of one meal per day for each team member (players as well as coaches). During 1980, petitioner paid, and claimed a charitable contribution deduction for, the following team-related expenses: 1) Tournament and league entry fees
$ 561
2) Meals and lodging for team members
while away from home
2,500
3) Equipment, uniforms and supplies
1,206
4) Trophies, tournament gifts [2] and printing
285
5) Medical expenses, postage & pictures
90
6) Travel to tournaments, games & practices
755
TOTAL
$5,397
*255 Petitioner paid these expenses either from a separate personal checking account, [3] with cash, or by using his personal credit card. None of the expenses incurred by petitioner (with the exception of the tournament and league entry fees) were required by the League or by the Association, and neither the League nor the Association had control over the amounts expended in connection with the team. Petitioners contend that the payment of these expenses was incident to the rendering of services to or on behalf of the League and the Association, both of which are qualifying organizations under section 501(c)(3) to which deductible charitable contributions may be made. Petitioner also donated $100 to a YMCA softball team, and purchased $80 worth of raffle tickets in a raffle sponsored by the Western Arkansas *256 Girls' Softball League. These contributions were claimed as charitable contribution deductions on petitioners' 1980 return; respondent disallowed such deductions. OPINION Section 170(a) allows as a deduction any charitable contribution (defined in section 170(c)) made within the taxable year. As relevant herein, section 170(c) defines a "charitable contribution" as a contribution or gift to, or for the use of, a "corporation, trust, or community chest, fund or foundation" which is organized and operated exclusively "to foster national or international amateur sports competition (but only if no part of its activities involves the provision of athletic facilities or equipment)." Section 170A-1(g), Income Tax Regs., provides: Contributions of Services. No deduction is allowable under section 170 for a contribution of services. However, unreimbursed expenditures made incident to the rendition of services to an organization contributions to which are deductible may constitute a deductible contribution. For example, the cost of a uniform without general utility which is required to be *257 worn in performing donated services is deductible. Similarly, out-of-pocket transportation expenses necessarily incurred in performing donated services are deductible. * * * Petitioners have the burden of proving their entitlement to a deduction under section 170. Rule 142(a), Tax Court Rules of Practice and Procedure.
Where a taxpayer incurs unreimbursed expenses incident to rendering services to a charity, in order for the expenses to be deductible, the charitable organization must be the primary beneficiary of the taxpayer's unreimbursed expenses. If the expenses provide a substantial, direct and personal benefit to the taxpayer or to someone other than the charity, deductibility is precluded. Seed v. Commissioner,57 T.C. 265, 276 (1971); Fausner v. Commissioner,55 T.C. 620, 624 (1971), affd. 472 F.2d 561 (5th Cir. 1973); Saltzman v. Commissioner,54 T.C. 722, 725 (1970). *258 Where a taxpayer donates funds to an individual ostensibly as a representative of a charity (or earmarks donated funds for a particular individual), in determining whether the funds are used "to or for the use" of a charity, so as to be deductible, the critical factor is the taxpayer's intent (i.e., did the taxpayer intend to benefit the charity or the individual?) Kluss v. Commissioner,46 T.C. 572, 575 (1966); Peace v. Commissioner,43 T.C. 1, 8 (1964). [4] A taxpayer's intent to benefit the charity is manifested by placing the contributed funds under the charity's control. Peace v. Commisioner,supra at 7-8. Of the $5,397 claimed as a charitable deduction for the team-related expenses, only the tournament and league entry fees (in the aggregate amount of $561) were made directly to the exempt organizations by petitioner in his capacity as the team sponsor. The funds stemming from the payment of these fees were under the control of the exempt organization. Although we recognize that the team could not have participated in tournament and league games without *259 payment of the entry fees, we believe that payment of these fees was intended to primarily benefit the League and the Association, rather than the team or its members. Thus, the $561 paid for the entry fees is deductible. [5]
The balance of $4,836 of the claimed expenses provided a substantial, direct and personal benefit to petitioner and the other individual team members; neither the League nor the Association had any control over these expenditures. Accordingly, the amounts spent for meals and lodging for team members while away from home, equipment, uniforms and supplies, trophies, tournament gifts and printing, medical expenses, postage and pictures, and travel to tournaments, games, and practices are not deductible. [6]
*260 Although petitioner's generosity is laudable, not every act of kindness gives rise to a charitable contribution deduction. Petitioner's $100 deduction to the YMCA softball team is deductible. The check for this donation was deposited in the bank account of the Little Rock, Arkansas, YMCA which the parties have stipulated to be a qualified recipient charitable organization. Petitioner is not entitled to a deduction for the $80 spent for tickets to the raffle sponsored by the Western Arkansas Girls' Softball League. The purchase of raffle tickets is not a charitable contribution, but merely is the price paid for the chance to obtain a valuable prize. Goldman v. Commissioner,46 T.C. 136 (1966), affd. 388 F.2d 476 (6th Cir. 1967). To reflect the foregoing, and petitioner's concession, Decision will be entered under Rule 155.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended and in effect during 1980.↩
2. It was customary in some tournaments for opposing teams to exchange inexpensive gifts. Trophies were given to the teams finishing first, second, third and fourth. When petitioner's team finished fifth, petitioner gave each team member a plaque so that everyone on his team was "a winner."↩
3. Petitioner maintained a separate checking account for Patterson's Patriots.↩
4. See note 5.↩
5. We deem it essential to state that our holding is to be limited to the facts involved herein. We do not mean that registration fees paid to an exempt organization by an individual (or a relative of an individual) in order for that individual to participate in a recreational or educational activity is deductible.↩
6. We are aware that the Court of Appeals for the Fifth Circuit has held that a charitable contribution deduction is available if either the charity is the primary beneficiary of the donation or the charity has control over the contributed funds, and that neither the primary benefit test nor the control test is required to be applied to the exclusion of the other. Brinley v. Commissioner,782 F.2d 1326 (1986), vacating and remanding 82 T.C. 932 (1984). An appeal of our decision herein would lie with the Court of Appeals for the Eighth Circuit. Hence, we are not constrained by the principle established in Golsen v. Commissioner,54 T.C. 742 (1970), affd. 445 F.2d 985 (10th Cir. 1971), to apply the principle of law enunciated by the Fifth Circuit in Brinley.↩In any event, whether we apply the control test or the primary benefit test, or both, the result herein would be the same.