**Harold DAVIS and Enid Davis, Plaintiffs–Appellants,**

**v.**

**UNITED STATES of America, Defendant–Appellee.**

**No. 87–4170.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 4, 1988.
Decided Nov. 14, 1988.
As Amended Feb. 21, 1989.

Wilford W. Kirton, Jr., Kirton, McConkie & Bushnell, Salt Lake City, Utah, for plaintiffs-appellants.

Francis M. Allegra, Dept. of Justice, Washington, D.C., for defendant-appellee.

Before BROWNING, BRUNETTI and TROTT, Circuit Judges.

BRUNETTI, Circuit Judge:

## INTRODUCTION

This matter is before the court following the district court's granting of summary judgment in favor of the United States, *Davis v. United States*, 664 F.Supp. 468 (D.Idaho 1987). Plaintiff-appellants Harold and Enid Davis claimed charitable deductions under Internal Revenue Code Section 170 for funds they sent to their two sons for their support while they served as full-time unpaid missionaries for the Church of Jesus Christ of Latter–Day–Saints ("Church"), Benjamin Davis at the New York City Mission and Cecil Davis at the New Zealand/Cook Islands Mission. These deductions were disallowed by the Internal Revenue Service and the appellants initiated the present refund suit. The district court determined that (1) these funds were not deductible as "unreimbursed expenses" because such expenses may be deducted only by the individual performing services while "away from home," and only if the primary motive in performing the services was to benefit the charity, and (2) that they

were not deductible as charitable contributions because the Church did not exercise sufficient control over the disposition of the funds.

We have jurisdiction pursuant to 28 U.S. C. Sec. 1291 and affirm.

## BACKGROUND

A primary activity of the Church is its worldwide missionary program. Over 25,-000 individuals have participated annually since 1977. Missionaries typically serve the Church for two years at a location assigned by the Church. Missionary work is uncompensated, but the Church will pay mission-related expenses if the missionary is unable to support himself or obtain the necessary funds from his family. Most missionaries are between the ages of nineteen and twenty-two; many receive payments from their parents to defray their living expenses. After an individual is "called" by the Church to serve as a missionary the Church advises parents of the amount that it believes will be necessary to provide for the missionary's support and requests their assistance.

The life of a missionary is closely supervised by the Church. Benjamin and Cecil were expected to conform to a schedule that regulated most of their waking hours. Both missionaries claim to have devoted over seventy-five hours per week to missionary work and religious study. Mission rules prohibit missionaries from dating, attending movies or plays, or engaging in various sports or other activities. Missionaries are required to submit weekly reports to their Mission President detailing the amount of time spent in Church service and explaining their expenses for the week. The Missionary Handbook contains the following admonition to missionaries: "The money received for your support is sacred and should be spent wisely and only for necessary work. Keep expenses at a minimum.... Keep financial records of all expenditures."

The Church gives several reasons for its preference not to collect and distribute contributions for the support of its missionaries. First, the Church feels that direct contributions to missionaries foster the Church doctrine of sacrifice and consecra-

tion. Second, the Church believes that direct transmittal promotes frugality by missionaries because of their awareness of the personal sacrifices that are being made on their behalf. Third, direct transmittal of contributions reduces the administrative and bookkeeping expenses that would otherwise be imposed on the Church.

The appellants' sons, Benjamin and Cecil, both volunteered for, and were "called" by the Church to serve as missionaries when they became nineteen years old. During 1980 and 1981 the appellants transferred $3480.89 and $4135.00 to Benjamin's checking account. Except for approximately $20 per month, which was used to purchase religious materials, Benjamin used this money primarily for living expenses. During 1981 appellants transferred $1518.00 to Cecil's checking account. Cecil also used this money primarily to pay his living expenses. At the end of his missionary service, Cecil had no unexpended funds. Benjamin had unexpended funds with which he purchased a camera. The appellants filed two amended tax returns for 1980 and 1981; the first claiming as charitable contributions the full amounts they sent to their sons, and the second reducing this amount to what has been requested by the Church and disclaiming their sons as dependents.

The appellants attempted to characterize their deductions as unreimbursed expenses incurred in charitable service or, in the alternative, as charitable contributions. The district court refused to consider the claimed deductions as unreimbursed expenses because they were incurred by a person other than the taxpayer. *Davis,* 664 F.Supp. at 471–72. In determining whether the deductions could be characterized as charitable contributions the district court applied a "control" test, which considers whether the charitable organization exercises control over the use of the funds. Concluding that the missionaries, rather than the Church, controlled the disposition of the funds, the district court held that the deductions were properly disallowed by the Internal Revenue Service. *Id.* at 472. Thus, the Government's motion for summary judgment was granted.

## STANDARD OF REVIEW

We review a grant of summary judgment *de novo. Darring v. Kincheloe,* 783 F.2d 874, 876 (9th Cir.1986) (citing *Lojek v. Thomas,* 716 F.2d 675, 677 (9th Cir.1983)); *Ashton v. Cory,* 780 F.2d 816, 818 (9th Cir.1986). The appellate court's review is governed by the same standard used by the trial court under Fed.R.Civ.P. 56(c). *Darring,* 783 F.2d at 876. The appellate court must determine, viewing the evidence in a light most favorable to the nonmoving party, whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law. *Ashton,* 780 F.2d at 818. *See also Lew v. Kona Hospital,* 754 F.2d 1420, 1423 (9th Cir.1985). Because the material facts are not in dispute, our inquiry is limited to the district court's application of the substantive law.

## DISCUSSION

### A. *Applicable Law*

We take judicial notice of the fact that the Church is a qualified religious organization to which deductible contributions can be made. Internal Revenue Service Publication No. 78, *Cumulative List of Organizations* 216 (1984).

*26 U.S.C. Sec. 170:* Section 170 of the Internal Revenue Code, 26 U.S.C., provides in part:

(a) *Allowance of deduction.*—

(1) *General Rule.*—There shall be allowed as a deduction any charitable contribution (as defined in subsection (c)) payment of which is made within the taxable year. A charitable contribution shall be allowed as a deduction only if verified under regulations prescribed by the Secretary.

. . . .

(c) *Charitable contribution defined.*— For purposes of this section, the term "charitable contribution" means a contribution or gift to or for the use of—

. . . .

(2) A corporation, trust, or community chest, fund, or foundation—

. . . .

(B) organized and operated exclusively for religious, charitable, scien-

tific, literary, or educational purposes....

*Treas.Reg. 1.170A–1(g):* Title 26 C.F.R. Section 1.170A–1(g) provides:

*Contributions of services.* No deduction is allowable under Section 170 for a contribution of services. However, unreimbursed expenditures made incident to the rendition of services to an organization contributions to which are deductible may constitute a deductible contribution. For example, the cost of a uniform without general utility which is required to be worn in performing donated services is deductible. Similarly, out-of-pocket transportation expenses necessarily incurred in performing donated services are deductible. Reasonable meals and lodging necessarily incurred while away from home in the course of performing donated services also are deductible.

From the foregoing statutes it is apparent that expenditures may be deductible under two approaches. First, under Section 170, deductions are allowed for charitable contributions made "to or for the use of" qualified organizations. The requisite elements are (1) that the transfer of property is made with no expectation of a quid pro quo, (2) that it is made to a qualified recipient, and (3) that it is made "to or for the use of" the qualified recipient. *See Smith v. Commissioner,* 800 F.2d 930, 934 (9th Cir.1986); *Allen v. United States,* 541 F.2d 786, 788 (9th Cir.1976). Second, under Treas.Reg. 1.170A–1(g), expenditures related to the contribution of services are deductible as "unreimbursed expenses made incident to the rendition of services" to a qualified organization. The appellants argue that the payments they made to their sons were "for the use of" the Church and therefore deductible as charitable contribution, or, in the alternative, that they are deductible as unreimbursed expenditures made in connection with the contribution of services to the Church. The government argues that the expenditures were not charitable contributions because they were never within the physical control of the Church, and that they were not unreim-

bursed expenses because the individual claiming the deduction did not perform the services.

**B. Charitable Contributions**

In situations where a taxpayer has claimed a charitable deduction for funds that have been earmarked for a specific individual, courts have considered whether the charity exercises control over the use of the funds. *See Winn v. Commissioner,* 595 F.2d 1060, 1065 (5th Cir.1979) (church sponsored fund raiser to collect funds as part of its work, [church] officer took the funds donated and dealt with them as the church wished, and funds went to support the work the church intended, is sufficient to establish funds were donated "for the use" of the church); *Peace v. Commissioner,* 43 T.C. 1, 7–8 (1964) ("Contributions to mission earmarked for specific individuals deductible because the mission had exclusive control, under its own policy, over funds, and taxpayer's designation of specific individuals only manifested a desire to have the donations credited to the support of those individuals."); *see also Tripp v. Commissioner,* 337 F.2d 432, 436 (7th Cir.1964) (payments earmarked for the educational expenses of a particular individual not deductible because they were not made "to a general scholarship fund to be used as the college saw fit").

The appellants assert that because their contributions conferred a benefit on the Church they should qualify as charitable contributions. They claim that actual control by the charity is a factor to be considered, but should not be required in all cases. Rather, the appellants urge, the test of deductibility should turn on whether the contributions stem from a charitable intent on the part of the donor. The government responds that the plain wording of Section 170 precludes this construction and that the deduction should be disallowed because the contributions were received directly by the missionaries from the taxpayer (parents) and were neither to nor for the use of the Church. The government also argues that a charitable intent can only exist where the contribution is based on a "detached and disinterested generosity," *see Commissioner v. Duber-*

*stein*, 363 U.S. 278, 285, 80 S.Ct. 1190, 1197, 4 L.Ed.2d 1218 (1960) (internal quotation omitted), that was absent in this case because the donors received a quid pro quo—the assurance that the family member who was serving as a missionary would be properly clothed, housed, and fed. *Cf. DeJong v. Commissioner*, 369 F.2d 373, 376 (9th Cir.1962) (money spent toward the education of a specific child is a family expense and therefore is not deductible as a charitable contribution to the school).

The Tenth Circuit addressed this issue in *White v. United States*, 725 F.2d 1269 (10th Cir.1984) in a factual setting indistinguishable from the one at bar. The government in *White* urged the court to adopt the control test that was first applied by the Tax Court in *Peace v. Commissioner*, 43 T.C. at 7–8. In *Peace*, the taxpayers sent checks to the Sudan Interior Mission, which were deposited by the Mission into a common pool from which all missionaries received their support. *Id.* at 7. The *Peace* court found it critical that donations were deposited in a common pool and disbursed only as the mission determined, despite specific directives by the donors. *Id.* at 8. *See also* Rev.Rul. 62–113, 1962–2 C.B. 10 ("The test in each case is whether the organization has full control of the donated funds as to their use, so as to insure that they will be used to carry out its functions and purposes."). The *White* court rejected the control test and held that the proper test of deductibility is "whether the primary purpose [of the contribution] is to further the aims of the charitable organization or to benefit the person whose expenses are being paid." *White*, 725 F.2d at 1271–72. Applying this "primary purpose" test, the court determined that payment for the support of a full-time missionary who was away from home primarily served the goals of the Church rather than the missionary and was therefore deductible. *Id. See also Brinley v. Commissioner*, 782 F.2d 1326, 1330–32 (5th Cir.1986) (Control is a "legitimate gauge" in determining deductibility, but the standard is whether the charitable work is the cause of the payment, and causation is established when the charity is the primary beneficiary of the gift.).

With the exceptions of the Tenth Circuit in *White* and the Fifth Circuit in *Brinley*, however, courts have employed the primary purpose test only in those instances in which the taxpayer has sought a charitable deduction for his own expenses. *See Brinley*, 782 F.2d at 1338 (Hill, J., dissenting). We decline to apply the primary purpose test here. The better reasoned approach, we feel, is to require that the recipient charity have control over the donated funds. The control gauge stems from the basic requirement that the beneficiary of a charitable contribution must be indefinite. *See Russell v. Allen*, 107 U.S. 163, 167, 2 S.Ct. 327, 330, 27 L.Ed. 397 (1883). When a taxpayer intends a contribution for a specific purpose, or even a specific individual, but the charity retains control over the funds, this requirement is satisfied. But when a taxpayer makes a contribution directly to the intended beneficiary so that the charity never possesses the funds, let alone controls their use, there can be no guarantee that the beneficiary will be indefinite. *See Barry's Estate v. Commissioner*, 311 F.2d 681 (9th Cir.1982) (property bequeathed to member of Jesuit Order, as opposed to Order itself, not deductible though legatee obligated by Canon law to transfer property acquired to the Order; court noted possibility that legatee could leave the Order). Here the charity lacked actual control over the funds. Contributions were deposited directly into the personal checking accounts of the taxpayers' sons. While the Church admonished the missionaries to spend their money wisely, the particular use to which the funds were put was solely within the control of the missionaries. Any surplus received by the missionaries was theirs to keep, and other than requiring the missionaries to submit weekly reports of their expenses, the Church had no discretion over the disposition of the funds.

### C. Unreimbursed Expenses

Regarding deductions that are claimed for unreimbursed expenses, we apply a "primary benefit" test: the expenditure is deductible only if the charity, rather than the taxpayer, receives the primary benefit of the expenditure. *See Babilonia v. Commissioner*, 681 F.2d 678, 679 (9th

Cir.1982). We have not previously considered the deductibility of expenses incurred by an individual other than the taxpayer. The appellants argue that the district court erred in concluding that Treas. Reg. 1.170A–1(g) was applicable only to the individual actually performing the services. Rather, the appellants urge the panel to construe the statutes liberally and follow the *White* court, which declared, "We see no rational basis for distinguishing the payment of the expenses of a dependent son from the payment of a taxpayer's own expenses to perform the same services." *White*, 725 F.2d at 1271.

The government responds that there is a legitimate basis for distinguishing between the individual who performs the services and the one who claims the deduction: while in theory there may be no difference between deducting amounts paid to a missionary for his Church-related expenses and paying the Church the same amount in the form of a deductible contribution, in practice a significant burden will be imposed on the Tax Service to prevent taxpayer abuses from this activity. Two specific types of abuses are feared by the government. First, parents in high tax brackets could contribute large amounts to their children, who they would be supporting anyway had they not undertaken a mission, and claim the amount was contributed to support charitable activity. The parents could then deduct an amount well in excess of what the charity would have paid the children for the same services. Moreover, deductions properly claimed by low tax bracket missionaries would shift to donees in higher tax brackets. These potential abuses would force the IRS to investigate the reasonableness of all direct contributions to missionaries. On the other hand, the government argues, if the money were required to first go to a charity, the possibility that excessive contributions would benefit the missionary rather than the charity would be greatly reduced. *See Brinley v. Commissioner*, 782 F.2d 1326, 1338 (5th Cir.1986) (Hill, J., dissenting).

Second, the government points out, double deductions could occur for the same expenditure: one by the donor and another by the missionary. While this specific wrongdoing is not alleged in the present case, it is a legitimate concern. We note, and find it troubling, that the Davises filed an amended United States individual income tax return, Form 1040X, for the years 1980 and 1981 claiming personal exemptions for their sons as dependents while at the same time claiming a charitable deduction for all the funds they paid to their sons for their support while serving as missionaries. When the IRS disallowed the claims, the Davises filed a suit for refund. Thereafter, the Davises filed a second set of amended returns limiting the amount of their claimed charitable deductions to the amounts the church established as the range of expenses for each mission and did not list Benjamin and Cecil as dependents. The first amended return illustrates the potential for double deductions that, while perhaps unintentional, nevertheless would deprive the government of revenue.

Other courts have concluded that in certain situations the taxpayer will be allowed a deduction for the unreimbursed expenses of a family member that are incurred in charitable work, and the Fifth Circuit has directly addressed the issue of unreimbursed expenses of Mormon missionaries. In *Brinley v. Commissioner*, 782 F.2d 1326 (5th Cir.1986), the court rejected the decisiveness of the *White* "primary purpose" test and applied a different test to allow a portion of the claimed deduction. The *Brinley* court chose to characterize the expenditures as unreimbursed expenses rather than charitable contributions, and applied a "causation" test, holding that "[t]he charitable work must be the cause of the payment in order for the payment to be deductible." *Id.* at 1331 (quoting *Orr v. United States*, 343 F.2d 553, 557 (5th Cir.1965)). *See also McCollum v. Commissioner*, 37 T.C.M. (C.C.H.) 1817, 1819–21 [available on WESTLAW, 1978 WL 3101] (1978) (taxpayer allowed a deduction for the expenses that he and his family members incurred in connection with their services to the National Ski Patrol, a qualified charitable organization).

■ Significantly narrowing the scope of the deduction that was allowed in *White*, the *Brinley* court further determined that

the missionary's tax home was where he was serving the Church, thereby precluding deductions for food and lodging expenses by either the parents or the missionary himself. A deduction was allowed only for those expenditures that primarily benefited the charity, i.e., proselytizing and out-of-pocket transportation expenses incurred by the missionary in the performance of his work. *Id.* at 1332.[1]

We do not read Treas.Reg. 1.170A–1(g) as permitting a deduction for unreimbursed expenses by anyone other than the taxpayer that actually performs the charitable service. Congressional interpretations of this section of this regulation supports our conclusion. As part of the Tax Reform Act of 1986, the House Ways and Means Committee made the following observation regarding Treas.Reg. 1.170A–1(g): "A taxpayer may deduct, as charitable deductions, unreimbursed out-of-pocket expenses incurred incident to the rendition of services *provided by the taxpayer* to a charitable organization." H.R.Rep. No. 99–426, 99th Cong., 1st Sess. 119 (1985) (emphasis added). Similarly, the Joint Committee on Taxation's *General Explanation of the Revenue Provisions of the Deficit Reduction Act of 1984*, 98th Cong., 2d Sess. at 1133 (1984) (emphasis added) provides: "Unreimbursed out-of-pocket expenses *incurred by the taxpayer* in rendering services to an organization ... are eligible for deduction as charitable contributions...." It is a fundamental principle of tax law that assignments of deductions are prohibited. *See New Colonial Ice Co. v. Helvering*, 292 U.S. 435, 440–41, 54 S.Ct. 788, 791, 78 L.Ed. 1348 (1934) ("taxpayer who sustain[s] the loss is the one to whom the deduction shall be allowed"), yet this is exactly what the appellants are attempting.

The appellants rely primarily on *McCollum v. Commissioner*, 37 T.C.M. (C.C.H.) 1817 (1978) and *Rockefeller v. Commissioner*, 676 F.2d 35 (2d Cir.1982), for support for their contention that expenses need not always be incurred by the individual claiming the deduction, but their reliance is misplaced. In *McCollum* the taxpayers, husband and wife, and two of their children served on the National Ski Patrol, and were allowed a charitable deduction for the expenses incurred by the family while rendering their services to the National Ski Patrol. In *Rockefeller* the taxpayers employed both their personal staffs and staff of the Rockefeller Family Joint Office in conducting their philanthropic affairs. The Rockefellers deducted as charitable contributions the salaries of the personal and Joint Office employees, as well as travel, entertainment and other expenses incurred

---

1. The determination of whether a taxpayer is away from home for tax purposes "is essentially a question of fact." *Frank v. United States*, 577 F.2d 93, 97 (9th Cir.1978) (citing *Curtis v. Commissioner*, 449 F.2d 225, 227 (5th Cir.1971)). "Away from home," for the purposes of Section 170, is the same as under Section 162, which allows a deduction for all "ordinary and necessary expenses paid or incurred during the taxable year ... while away from home in pursuit of a trade or business." In the context of business deductions, a taxpayer's home is his principal place of business. *Wills v. Commissioner*, 411 F.2d 537, 540 (9th Cir.1969). A taxpayer will be deemed to be away from home if he is on an assignment that will terminate within a reasonably short period of time. *Harvey v. Commissioner*, 283 F.2d 491, 495 (9th Cir.1960) ("[a]n employee might be said to change his tax home if there is a reasonable probability ... that he may be employed for a long period of time at his new station.... On the other hand, if it is very likely that taxpayer's stay away from home will be short; then it seems quite unreasonable to expect him to move his domi-

cile...."). *See also Peurifoy v. Commissioner*, 358 U.S. 59, 60, 79 S.Ct. 104, 105, 3 L.Ed.2d 30 (1958) (deduction allowed if employment is "temporary" as contrasted with "indefinite" or "indeterminate").

Thus, a temporary assignment of "short" duration will not require the taxpayer to relocate his tax home. Missionaries typically serve the Church for a two year period. The Tax Service has taken the position that temporary assignments expected to last one year or less will be considered under all the facts and circumstances, that stays of more than one year but less than two will be given a rebuttable presumption that the stay is indefinite, and that an expected or actual stay of two years or more will be considered indefinite and nondeductible regardless of the circumstances. Rev.Rul. 83–82, 1983–1 C.B. 45.

Because we hold that unreimbursed expenses are not deductible by a taxpayer who does not actually render the charitable service, we need not and do not answer the question of whether a missionary is "away from home" for tax purposes.

by the taxpayers and their employees in connection with their philanthropic activities. Unlike the situation in the present case, the deductions claimed in *McCollum* and by the Rockefellers were for unreimbursed expenses incurred by the taxpayers in rendering services to charities. *Rockefeller*, 676 F.2d at 41–42. In this case the missionary sons were acting independently of their parents and the parents were not rendering their services to the church. We hold that the taxpayer appellants may not deduct the funds they paid to their sons as unreimbursed expenses because the taxpayers were not engaged in charitable service.

CONCLUSION

Public policy demands that statutes governing the deductibility of charitable contributions be given a broad construction, *e.g.*, *Helvering v. Bliss*, 293 U.S. 144, 150–51, 55 S.Ct. 17, 20, 79 L.Ed. 246 (1934), and the general rule of construction is that tax provisions should be construed wherever possible in favor of the taxpayers. *E.g. Burnet v. Niagara Falls Brewing Co.*, 282 U.S. 648, 654, 51 S.Ct. 262, 265, 75 L.Ed. 594 (1931). The statutory system, however, does not provide for a deduction by a taxpayer who does not actually render service to the charity or make a contribution directly to the charity. Even the most liberal of constructions does not mean that statutory words and phrases are to be given meanings unjustified by legislative intent or that express limitations are to be ignored. *Better Business Bureau v. United States*, 326 U.S. 279, 283, 66 S.Ct. 112, 114, 90 L.Ed. 67 (1945). We do not question the high ideals of the Church or the valuable services it performs in connection with its missionary program. We are constrained by the law, however; and it is up to the legislature to provide the remedy that is sought by the appellants. The decision of the lower court is affirmed.

AFFIRMED.